THE STATE, CAROLINE M. DARCY, PROSECUTRIX, v. HENRY
    G. DARCY ET AL., THE BOARD OF ASSESSMENT AND
    REVISION OF TAXES OF THE CITY OF NEWARK.

A mortgage owned by a resident of this state, although made upon land
    situate in another state where a tax upon such land has been assessed
    and paid within the preceding twelve months, is taxable here.

On *certiorari*.    Review of assessment of taxes.

This writ brings up an assessment for taxes made against Caroline M. Darcy, the prosecutrix, living in the city of Newark. It is an assessment for the amount of a mortgage for $1,300, made by James A. Chambers on lands and premises in Greenwood county, in the State of Kansas.

The cause was argued upon the following statement of facts agreed upon by the respective counsel for the purpose of the argument:

I. The prosecutrix is the owner of a mortgage on lands in Greenwood county, Kansas, for $1,300, on which interest is payable semi-annually at six per centum per annum.

II. She claims before the defendants (making, under oath, according to law, a statement of her taxable property) that the same was not taxable on the ground that the mortgagor had paid a tax on the full value of the land in the State of Kansas, and within one year from the date of this assessment, the said mortgagor claiming no deduction from the taxable value of said land on account of said mortgage.

III. Prosecutrix's said claim was disallowed, and an assessment made on all her personal property, including the said mortgage, on June 1st, 1888, by the defendants.

IV. No deduction from the taxable value of the land covered by the said mortgage was claimed by or allowed to the mortgagor or any one for him, but that the tax on the full value thereof was actually assessed and paid within one year from this date, and the date of commencing the assessment in New Jersey. Nor did the mortgagor make any claim for deduction on account of the debt evidenced by the bond and mortgage of the prosecutrix.

V. The laws of the State of Kansas, relating to the taxation of property in that state, may be shown and referred to, as if herein set out, and made a part of this state of the case.

Argued at June Term, 1888, before Justices SCUDDER and REED.

For the prosecutrix, *Robert H. McCarter.*

For the defendants, *Joseph Coult.*

The opinion of the court was delivered by

REED, J. Section 61 of the general act concerning taxes (*Rev., p.* 1150) provides that all real and personal estate within this state, whether owned by individuals or by corporations, shall be liable to taxation at the full and actual value thereof.

Section 63 of the same act provides : " That the term ' personal estate,' as used in this act, shall be construed to include goods and chattels of every description, including steamboats and other vessels, money, debts due or owing from solvent debtors, whether on contract, note, bond, mortgage or book account, public stocks, and stocks in a corporation, whether said personal estate be within or without this state."

Section 64 provides that ":Stocks and other personal estate owned by citizens of this state, situate and being out of this state, upon which taxes shall have been actually assessed and paid within twelve months next before the day prescribed by law for commencing the assessment, shall be exempt from taxation."

The counsel for the prosecutrix claims that this mortgage is within the exemption words of the sixty-fourth section.

The insistence is that this mortgage represents property situated within the State of Kansas, which property has been there assessed and the taxes paid within the required period. The mortgage is treated as representing an estate or interest in land, and as having a *situs* in the jurisdiction where the land lies.

In the case of *King* v. *Reed*, 14 *Vroom* 186, a question arose as to whether one of the assessors appointed to make a special assessment of damages was disqualified by reason of his ownership of property in the town of Union and the township of West Hoboken. The statute disqualified him if he was the owner of property within either of those places. It was urged that he was the owner of property within the towns, because it appeared that he held a mortgage upon lands lying therein. It was held that a mortgage is a personal chattel and has no *situs* but the domicile of the owner, and that the fact that the land upon which it was an encumbrance happened to lie in the prescribed territory did not bring the assessor within the disqualifying clause of the statute.

This case was affirmed in the Court of Errors, in 19 *Vroom* 370. In the case of *Wade* v. *Miller*, 3 *Id.* 296, the Chief Justice remarked : " Except in questions arising between him

and the mortgagor, or his assigns, the interest of the mort-
gagee appears to have lost every quality of an estate. Such
an interest will not make the mortgagee a freeholder. If he
enters and holds the property, he is obliged to account to the
mortgagor, as owner, for rents and profits; if the money due
on his bond is paid to him, his connection with the land is
dissolved, for there is no necessity for a reconveyance, and at
his death the mortgagee's interest passes to his representatives
as personalty. In these and in all other particulars the land
seems to be a mere pledge in equity for the payment of a
debt."

In the case of the state tax on foreign-held bonds (15 *Wall.*
300), the Supreme Court of the United States held that the
State of Pennsylvania had no power to tax the bonds held by
a non-resident of that state, although the bonds were secured
by a mortgage upon property situated in that state. It was
held that the power of taxation in the state was limited to
persons, property and business within the state, and that
neither the person nor the property then taxed were so situated.
Justice Field remarked that, "It is undoubtedly true that the
actual *situs* of personal property, which has no visible or
tangible existence, and not the domicile of the owner, will, in
many cases, determine the state in which it is to be taxed.
The same thing is true of public securities, consisting of state
bonds and bonds of municipal bodies and circulating notes of
banking institutions; the former by general usage have
acquired the character of and are treated as property in the
place where they are found, though removed from the domi-
cile of the owner; the latter are treated and pass as money
wherever they are. But other personal property, consisting
of bonds, mortgages and debts, generally, has no *situs* inde-
pendent of the domicile of the owner, and certainly can have
none where the instrument, as in the present case, constituting
the evidence of indebtedness is not separated from the pos-
session of the owners." Among the cases cited by Mr. Jus-
tice Field in his opinion is that of *People* v. *Eastman,* 25 *Cal.*
603. The statute of California requires all property to be

taxed in the county where situated. "The mortgage," said the court, "has no existence independent of the thing secured by it; a payment of the debt discharges the mortgage. The thing secured is intangible, and has no *situs* distinct and apart from the residence of the holder. It pertains to and follows the holder. The same debt may at the same time be secured by a mortgage upon lands in every county in the state; and if the mere fact that the mortgage exists in a particular county gives the property in the mortgage a *situs*, subjecting it to taxation in that county, a party, without further legislation, might be called upon to pay a tax several times, for the lien for taxes attaches at the same time in every county in the state, and the mortgage in one county may be a different one from that in another, although the debt secured is the same."

It is perceived that the purport of the above cited opinions is, first, that a mortgage has no *situs* but that of the owner for any purpose, including that of taxation; and, second, that a state legislature has no power to fix a *situs* other than that of the owner for the purpose of imposing a tax upon its owner, who is in a foreign jurisdiction. And it must be kept in mind that what is said in those cases is said in respect of mortgages where the holder of the security and the owner of the land mortgaged are in different jurisdictions, or is said in respect of mortgages, the owners of which, and the land upon which they are secured, are in the same state, and there has been no legislative provision relative to the place of their taxation. While it is clear, under the rule enunciated by the federal courts, that a state legislature cannot impose a tax upon a mortgage upon lands within this state if such mortgage is owned by the resident of another state, yet it is equally clear that the legislature can exempt from taxation a mortgage held by its citizens upon land in another state, or can exempt land owned by a citizen subject to a mortgage held by a resident of another state. So, also, it seems clear that, although in the absence of legislative direction, all debts, including those secured by mortgages, are taxable to the owner at his domicile, yet the legislature has the undoubted ability to provide

for their taxation elsewhere, so long as such provision does not contravene the constitutional requirement that property shall be taxed under general laws and by uniform rules, according to its true value. *State* v. *Brannin*, 3 *Zab.* 484, 496.

The result deducible from these cases appears to be that the mortgage tax in the present case had its *situs* in the city of Newark; that there was no legislative provision changing the rule in this respect, and that the taxation of the land upon which it was secured in the State of Kansas cannot be regarded as a taxation of the mortgage, for, if so regarded, it would be clearly beyond the power of the legislature of Kansas to accomplish. The attention of the court was called to the case of *State, Vail's Executors, pros.,* v. *Runyon*, 12 *Vroom* 98. It is insisted that the doctrine enunciated in that case is inimical to this conclusion. The only question, as I understand the decision in that case, was whether a debt secured by a mortgage was thereby so differentiated from other debts as to make a rule applicable to the former alone a general rule. The legislature had expressly declared that mortgages should be taxed either as mortgages or as land at the place where the land was situated. The question in the cause was one of legislative power, and not of legislative intention. The court held that a mortgage had such a character, by reason of its representing a qualified interest in land, that it could be localized by the legislature and taxed at the domicile of the mortgagor. The language used in the opinion was employed exclusively in respect to that question.

Again, it is claimed that the legislative policy in this state has been averse to the taxation of both the mortgage and the land upon which the mortgage is a lien. It is therefore urged that it must have been the legislative intent to regard a mortgage and an interest in the land equal to the amount of the mortgage as identical subjects of taxation, in all cases where the statutes speak of property which has paid a tax within twelve months preceding. But, in the absence of express words, I do not regard this as a natural inference. Because

either the mortgage or the land is relieved from taxation when both are within this state, it does not follow that the legislature intended to apply the same rule when the land is beyond our jurisdiction. We must remember that the legislature has recognized a difference between debts owing to domestic and those owing to foreign creditors. While legislative policy permits the former to be deducted from the ratables of the debtor, it takes no cognizance of the latter.

The policy which permits a reduction for debts is induced by a desire to avoid double taxation. If the debtor pays taxes for all his property, and is permitted no deduction for the unpaid price of the same property, while the creditor is also taxed for such price, it is double taxation as obviously as if the price was secured by a pledge or a mortgage upon chattels or a mortgage upon land. A mortgage, while it has features which will justify exceptional legislative treatment, is but a debt secured by a lien upon land, and unless the legislative intent is plain to otherwise regard it, the credit is the thing which taxation reaches. *Desty on Tax.* 330. I find no such legislative intention in the statutory clause invoked by the prosecutrix. In it mortgages are not mentioned, while in the statute concerning the taxation of mortgages in this state the place of taxation is expressly fixed.

Our attention is again called to the condition of the law in respect to the taxation of stock in foreign corporations held by residents of this state. The cases are cited in which it is settled that a statute of this state exempting stocks in a corporation will exempt the property of the corporation, and a statute which exempts the property will exempt stock. *State* v. *Bentley*, 3 *Zab.* 532; *State* v. *Brannin, Id.* 484; *State, Longstreet, pros.*, v. *Jones*, 9 *Vroom* 83.

It is said that the theory upon which these cases go, is that a taxation of 'the corporate property and of the stock of the corporation are identical. It is also said that it has been the policy and practice, since the enactment of the statute of 1863, now embodied in the revised act (*Rev., p.* 1151, § 64), to

exempt from taxation the stock of foreign corporations held by resident tax-payers.

The exemption of such stock from taxation has, so far as I am aware, not been expressly decided in this state, but, assuming that such stock is exempt, I do not perceive how this fact leads to the conclusion that mortgages upon foreign land are also exempt. In the first place, the exemption clause of the Tax act uses the words "stocks, situate and being out of this state." The word "mortgage," as I have before observed, nowhere appears. Secondly, in the light of the several changes in the law upon this subject, in the successive acts of 1857 (*Pamph. L.*, *p.* 475), 1862 (*Pamph. L.*, *p.* 344), 1863 (*Pamph. L.*, *p.* 500) and 1866 (*Pamph. L.*, *p.* 1078), in which the word "stocks" appears, viewed in connection with the previous decision of our courts, holding that stock in a foreign corporation held here was taxable, it may with much reason be concluded that all stocks of foreign corporations should be exempt, and that this exemption should apply to all certificates of stock in such corporations, whether the certificates were within or without this state; but there is no legislative history appertaining to mortgages similar to this. The character of stocks, as property, is dissimilar from that of mortgages. The sum total of the property of the stockholders, as has been pointed out in the cases already cited in this state, is the sum total of the property of the corporation. It is substantially the *indicium* of all the property of the corporation. It is not a mere security for a debt which is the principal, but it is the thing itself. But apart from this dissimilarity between stocks and mortgages, the use of the word "stocks" in addition to the words "personal property" in the exemption clause of the statute, would seem to be an argument against including mortgages which are unnamed within the exemption.

The tax will be affirmed.