STATE BOARD OF TAX APPEALS.

DUKE POWER COMPANY, PETITIONER, v. HILLSBOROUGH TOWNSHIP, SOMERSET COUNTY, RESPONDENT.

Decided June 2, 1942.

For the petitioner, *Pitney, Hardin & Skinner* (by *Shelton Pilney* and *William J. Brennan,˙Jr.*).

For the respondent, *W. Eddy Heath, Charles F. Lynch* and *Frederick C. Vanhof*.

QUINN, President. The petition of appeal herein is to review the actions of the Somerset County Board of Taxation in assessing petitioner in the amount of $8,143,159, as for personal property omitted from taxation for the year 1939, on November 18th, 1940, and in entering an amended assessment thereon, in the sum of $21,953,125, by resolution dated November 22d, 1940. On the assessing date, October 1st, 1938, petitioner was a New Jersey corporation, with its prin-

cipal and statutory office in the respondent taxing district. Its business consists primarily of the generation and distribution of electric light and power in the States of North Carolina and South Carolina. Its chief business offices are situated in Charlotte, North Carolina.

The petition of appeal before this board charges that the assessments in question are contrary to our taxing laws, discriminatory, and in violation of the federal constitution. No attempt was made to prove the charge of discrimination and we therefore do not consider it. The constitutional point is of course beyond our purview, and we accordingly limit our consideration strictly to the other legal questions raised.

The fact background antedating the making of the assessments under review is as follows: On August 16th, 1939, the respondent taxing district filed an omitted property proceeding against the petitioner, for the year 1939, under the *second* of the two separate and distinct methods of assessing omitted property, provided for in *R. S.* 54:3-20; *N. J. S. A.* 54:3-20. It will be helpful if we set out the statute at this point:

"The county board of taxation shall, by resolution, cause to be entered upon the tax duplicate a proper assessment against any property omitted by the assessor. The board shall then give immediate notice of such entry and of the time and place of its next meeting to the owner of the property affected, and furnish a copy of the entry to the clerk or collector of the taxing district, who shall enter it on his tax list. On the written complaint of the collector, or any taxpayer of the taxing district or of the governing body thereof, that property specified has been omitted in the assessment, the county board, on five days' notice in writing to the owner by the party complaining, and after due examination and hearing, may enter the omitted property on the duplicate by judgment rendered within ten days after the hearing, a transcript whereof shall be furnished by the board to the collector, who shall amend his duplicate accordingly. The collector shall present such complaints and serve such notices as the governing body may direct and shall attend before the board and subpœna proper witnesses and pay their fees. He shall receive reimbursement therefor and two dollars for every day

he shall attend for his services from the taxing district. Such proceedings may be brought within one year from the date when taxes on real property become a lien."

The proceeding begun on August 16th, 1939, was "on written complaint * * * of the governing body," &c. The complaint before the county board purported to specify several items of the petitioner's personal property, assertedly omitted from taxation for the year 1939 by the assessor of Hillsborough, aggregating $17,673,877, including cash in the amount of $5,602,986. On motion by petitioner, the county board struck all of the items set out in the complaint, with the exception of the cash, on the ground that there was a failure properly to *specify* the property referred to, under the rule in *Duke Power Co.* v. *Essex County Board of Taxation (Supreme Court, 1937)*, 122 *N. J. L.* 589; 7 *Atl. Rep.* (2*d*) 409; *affirmed (Court of Errors and Appeals, 1940)*, 124 *N. J. L.* 41; 11 *Atl. Rep.* (2*d*) 21. Upon appeal by the petitioner as to the determination of the sufficiency of the specification of the cash, the Supreme Court and the Court of Errors and Appeals affirmed. *Duke Power Co.* v. *Somerset County Board of Taxation (Supreme Court, 1940)*, 124 *N. J. L.* 481; 12 *Atl. Rep.* (2*d*) 234; *affirmed (Court of Errors and Appeals, 1940)*, 125 *N. J. L.* 431; 15 *Atl. Rep.* (2*d*) 460.

On November 13th, 1940, the county board of taxation reconvened for the purpose of hearing and rendering a determination with respect to the complaint. It heard testimony adduced by the taxing district with respect to petitioner's cash, and received and filed a sworn claim for exemption of the cash, submitted by petitioner in compliance with the requirements of *R. S.* 54:4-15; *N. J. S. A.* 54:4-15. The exemption was claimed under *R. S.* 54:4-3.2; *N. J. S. A.* 54:4-3.2, on the ground that the cash constituted property situated out of the state, upon which taxes had been assessed and paid in North Carolina. The claim of exemption specified the cash as consisting of bank balances of $6,364,430.58 and cash on hand of $11,962.35, both as of October 1st, 1938. The county board apparently disregarded the claim of exemption and accepted the testimony offered by respondent at its face value, resulting in the assessment of $8,143,159, first above referred to.

On November 22d, 1940, acting under the *first* method of assessing omitted property, provided for by *R. S.* 54:3-20; *N. J. S. A.* 54:3-20, the county board of taxation, by resolution as provided in the first sentence of the section, directed that an assessment of $21,953,125 against petitioner for omitted property, be entered upon the tax duplicate of the Township of Hillsborough for the year 1939, the said entry purporting to assess all of the intangible personalty of the petitioner, and amending the assessment of $8,143,159, made November 18th, 1940, which, it was recited, had covered cash only. The board also, in literal compliance with the second sentence in *R. S.* 54:3-20; *N. J. S. A.* 54:3-20, gave petitioner immediate notice of the time and place of its next meeting, the date being December 2d, 1940. On that day counsel for petitioner appeared before the county board and filed a sworn claim for exemption, detailing at length all of the intangible property owned by petitioner on October 1st, 1938, and claiming exemption upon the ground that all of it was situated and taxed out of the State of New Jersey, within the contemplation of *R. S.* 54:4-3.2; *N. J. S. A.* 54:4-3.2. Counsel also attempted to offer in evidence certain exhibits designed to prove the allegations of fact maintained in support of the claim for exemption, but the board declined to accept these in evidence and further declined to take any action on the claim for exemption.

The issues to which petitioner has confined its attention in its brief arise out of these contentions:

1. That the Somerset County Board of Taxation relied upon incompetent testimony in arriving at the determination of a valuation of $8,143,159 for petitioner's cash, as of October 1st, 1938, by its assessment of November 18th, 1940.

2. That the amended assessment of $21,953,125, dated November 22d, 1940, was a nullity, having been entered out of time, without a preliminary specification of the property assessed, without legal notice to petitioner, and without affording petitioner a hearing.

3. That both the original and amended assessments should be canceled as exempt, for the reason that all of the petitioner's intangible personalty was situated in North Carolina,

where it was assessed for taxation, and the taxes paid, during the twelve months preceding October 1st, 1938, all as provided for in R. S. 54:4-3.2; N. J. S. A. 54:4-3.2; and that proper and timely claim for exemption was filed by petitioner, to the extent that R. S. 54:4-15; N. J. S. A. 54:4-15 requires such claim as a condition for exemption.

Respondent meets these arguments by contending that the actions of the county board complained of were within the provisions of the statute, that the determinations of valuation were proper in the absence of a compliance by petitioner with *subpœnas duces tecum*, calling for the production of its books before the county board; that timely claims for exemption were not filed by petitioner; that the property for which exemption is claimed does not qualify therefor under the statute; that any errors or irregularities in the proceedings before the county board are curable by this board under R. S. 54:4-58 and 54:4-59; N. J. S. A. 54:4-58 and 54:4-59, and that a consideration of all the proofs will show taxable intangible property of the petitioner, lawfully subject to taxation for the year 1939, in excess of the assessment of $21,353,125.

In the interest of an orderly disposition of the issues thus outlined, we will first dispose of the procedural and jurisdictional questions raised by the petitioner, and then of the substantive questions of exemption and valuation. Fundamental to the entire case is the question as to whether the amended assessment of November 22d, 1940, is irregular or illegal, and, if so, whether any defect, irregularity, or illegality by the county board is amendable by this board under the provisions of R. S. 54:4-58 and 54:4-59; N. J. S. A. 54:4-58 and 54:4-59. If we are barred from any consideration of this later assessment, our inquiry must be limited to the propriety of the original assessment of $8,143,159 made on November 18th, 1940. If, however, the proceedings of November 22d, and December 2d, 1940, were unexceptionable, or if any defect therein is subject to correction under R. S. 54:4-58 and 54:4-59; N. J. S. A. 54:4-58 and 54.4-59, we are bound to inquire and determine whether petitioner was lawfully subject to taxation by the respondent taxing district to the extent of all or any part of the $21,953,125 entered on the lists by the county board on November 22d, 1940.

Petitioner's main contention with respect to the assessment by the resolution of November 22d, 1940, is that it is void, for the asserted reason that an assessment of omitted property *by resolution* of a county board of taxation, under the procedure prescribed in the first two sentences of *R. S.* 54:3-20; *N. J. S. A.* 54:3-20, may be made only during the period for revising and equalizing the local lists and duplicates, which period expires on April 1st of the current tax year, and that the extended period of limitations until December 1st of the following year, specified in the last sentence of section 54:3-20, is intended to apply only to omitted property proceedings instituted "on written complaint," &c., as provided in the procedure described in the section, commencing with the third sentence therein. This argument is founded upon an interesting and scholarly development by counsel of the historical background of *R. S.* 54:3-20; *N. J. S. A.* 54:3-20, and of a showing that formerly there were two separate procedures for assessing omitted property, roughly analogous to the procedures provided in section 54:3-20, and that the first, corresponding with that here under discussion, was, under *Pamph. L.* 1848, *p.* 230, specifically limited to use "at any time before the meeting of the commissioners of appeal in cases of taxation." From this it is argued that the successor statutes, section 28 of the General Tax Act of 1903 (*Pamph. L.* 1903, *p.* 412) and *R. S.* 54:3-20; *N. J. S. A.* 54:3-20, must necessarily be construed so as to write into the legislation a time limitation for assessment of omitted property by resolution, *which is not stated in the law,* and to require that the time limitation of one year after December 1st of the tax year, which is specified at the end of *R. S.* 54:3-20; *N. J. S. A.* 54:3-20 in a manner inferably applicable either to assessments by resolution or assessments after written complaint, be construed as applicable only to proceedings to assess omitted property on written complaint, &c. It cannot be gainsaid that to accede to petitioner's contention would be to rewrite *R. S.* 54:3-20; *N. J. S. A.* 54:3-20. Counsel contend, however, that their construction of the law is mandatory, as otherwise the requirement for a specification of the omitted property in a written complaint, five days' notice, &c., as

provided in the second procedure prescribed in *R. S.* 54:3-20; *N. J. S. A.* 54:3-20, would be meaningless and superfluous. We are quite unable to agree with the conclusion drawn. It is a perfectly sensible construction of *R. S.* 54:3-20; *N. J. S. A.* 54:3-20 to say that it is the legislative intention that in cases where the county board of taxation *chooses to act* with respect to omitted property, *on its own motion,* or on information known to one of its members or otherwise received, it may add the property by resolution forthwith, giving notice of the time and place of its next meeting to the taxpayer affected; but that where a taxpayer or a taxing district seeks *to compel* the addition of omitted property by a county board, it is the legislative intent to require a written complaint specifying the property omitted, five days' notice of hearing, and a judgment rendered within ten days after the hearing. It is not an impugnment of the reasonableness of this legislative intent to conclude that either mode of adding the omitted property is available until December 1st of the year after the tax year.

Our views in the matter are fortified by the consideration that under *R. S.* 54:4-47; *N. J. S. A.* 54:4-47 it is made the duty of the county board of taxation, generally and without limitation of time, to "add to the lists and duplicates any property which has been omitted or overlooked, at its true value, and in general do everything necessary for the taxation of all property in the county equally and at its true value." It would certainly not be in aid of the necessary integration of this provision with those of *R. S.* 54:3-20; *N. J. S. A.* 54:3-20, which are *in pari materia,* to read into the provision in the latter for the addition of omitted property by resolution of county boards of taxation, a time limitation not stated therein, and which could only have the effect of cramping the county boards in their exercise of this salutary function of assessing omitted property—a time limitation, moreover, which necessarily conflicts with a specific time limitation provided for, which, on the face of the section, is applicable to both of the procedures provided therein for the assessing of omitted property. We conclude, thus, that the proceedings which commenced on November 22d, 1940, were not out of time.

We are further of the opinion that the proceedings are not defective because not accompanied by a specification by the county board of the property omitted, broader than, as stated in the resolution, "a total assessment of $21,953,125, * * * which total amount represents the true value of intangible personal property wholly omitted by the local assessor for Hillsborough Township on the assessing date, October 1st, 1938, on which date said intangible personal property was owned by said Duke Power Company." This adequately apprised petitioner of the subject-matter of the assessment, to the point where it has, in this appeal, been able to make a defense on the merits as exhaustive as is readily conceivable. *Milsch* v. *Riverside* (*Court of Errors and Appeals*, 1941), 86 *N. J. L.* 603; 92 *Atl. Rep.* 436, cited by petitioner, is not in point in the present connection, since in that case, no notice of the omitted assessment was given the taxpayer at all, whereas here there was immediate notice. The line of cases construing the requirement in *R. S.* 54:3-20; *N. J. S. A.* 54:3-20 that, on written complaint, &c., property "specified" to be omitted, may be added to the duplicate, is not here applicable, since those cases deal only with the language of the procedure for the assessment of omitted property by complaint, and not with the situation where, as here, the assessment is by resolution of the county board.

Nor are we impressed with the argument that the assessment of November 22d, 1940, must be deemed a nullity because, as asserted, petitioner was not given notice of the next "appellate term" of the county board of taxation. The statute requires only that it be given notice of the time and place of the "next meeting" of the board. Such notice here in fact was given. The obvious design of the provision is to furnish an immediate and summary opportunity for the taxpayer to show cause why the assessment should be vacated. The taxpayer here appeared before the county board on the date specified in the notice, and filed its claim for exemption. The unjustified refusal of the county board to conduct an orderly hearing, and to receive petitioner's proofs in evidence, or to render a determination on petitioner's motions, are not jurisdictional defects, but merely erroneous actions, to the

extent that they failed to grant proper relief, and they are fully subject to correction by this board upon this appeal. Where an assessment is entered in proper form by the assessing officer or body, the improper handling of the appeal by the appellate board of first instance does not operate to nullify the assessment, especially where, as here, further appeals were available and taken as to the merits of the assessment. That was the situation here, since the county board, in entering its resolution, was· acting as an assessor, whereas on December 2d, 1940, its next meeting, it should have been conducting itself as an appellate body.

Another view of these matters requires the same result. Respondent contends that the objections assigned by the petitioner to the proceedings of November 22d, and of December 2d, 1940, are, at most, irregularities or illegalities amendable under *R. S.* 54:4-58; *N. J. S. A.* 54:4-58, and that on this review it is the duty of this board, under *R. S.* 54:4-59; *N. J. S. A.* 54:4-59, to make such amendment and to determine the sum for which petitioner was lawfully taxable by the respondent taxing district, for the tax year 1939. We are in accord with this view.

*R. S.* 54:4-58 and 54:4-59; *N. J. S. A.* 54:4-58 and 54:4-59 are as follows:

"54:4-58. No tax, assessment or water rate imposed or levied in this state shall be set aside or reversed in any action, suit or proceeding for any irregularity or defect in form, or illegality in assessing, laying or levying any such tax, assessment or water rate, or in the proceeding for its collection if the person against whom or the property upon which it is assessed or laid is, in fact, liable to taxation, assessment or imposition of the water rate, in respect to the purposes for which the tax, assessment or rate is levied, assessed or laid.

"54:4-59. The court in which any action, suit or proceeding is or shall be pending to review any such tax, assessment or water rate shall amend all irregularities, errors or defects, and may if necessary ascertain and determine the sum for which the person or property was legally liable and by order or decree fix the amount thereof. The sum so fixed shall be the amount of tax, assessment or water rate for which the person or property shall be liable."

The public policy expressed in these sections is of long standing, dating from 1881, when the original predecessor of sections 54:4-58 and 54:4-59 was enacted by the legislature. *Pamph. L.* 1881, *ch.* 157. The courts have been consistent and assiduous in according the broadest possible interpretation to this legislation, to the end that no property legally taxable in this state should escape taxation, through mistake, irregularity, error, or illegality of any kind by officials charged with the assessment, collection, or review of tax assessments. The language of the statute is as sweeping in coverage as could have possibly been employed to effectuate the purpose stated. It was early said of this legislation, by Chief Justice Beasley, in *Conover* v. *Honce (Court of Errors and Appeals, 1884)*, 46 *N. J. L.* 347:

"As I read that act, its effect is to destroy, root and branch, the power to defeat such a proceeding except upon a meritorious ground. If the person or the property be not taxable, the processes of appeal and *certiorari* retain their usual efficacy, but, touching forms and irregularities of procedure, they have been stripped of all force whatever. In fact, the statute, in very terms, declares that such shall be its effect."

In *Saunders* v. *Morris (Supreme Court, 1886)*, 48 *N. J. L.* 99; 2 *Atl. Rep.* 666, the nature of the illegality there held not to warrant an invalidation of an assessment, under this curative statute, was the levying of a tax under a statute repealed by the constitutional amendment of 1875, requiring the taxation of property by general laws. It is difficult to conceive of a case of illegality more egregious than that of a tax under an inoperative statute. Yet the court said:

"Under such circumstances, the general act respecting taxes, assessments and water rents, approved March 23d, 1881 (*Pamph. L., p.* 194) prohibits the court from annulling taxes, *merely because of illegality in the assessment of the same,* and makes it our duty to see that the complaining taxpayer bears his fair share of the common burden." (Italics supplied.)

We are clear that the problem before us is settled by the case of *Musconetcong Iron Works* v. *Netcong (Supreme Court,* 1917), 90 *N. J. L.* 58; 99 *Atl. Rep.* 914, where the

curative statute was applied *specifically to amend a defect in the assessment of omitted property* under the first of the two procedures outlined in section 28 of the act of 1903, corresponding to the method of resolution by the county board, under *R. S.* 54:3-20; *N. J. S. A.* 54:3-20, here used by the Somerset County Board in levying the assessment of November 22d, 1940. In that case, an assessment against omitted property owned by the prosecutor was levied without the requisite timely notice of the time of the next meeting of the county board of taxation. The court observed, however, that "no harm was done, since the prosecutor appealed to the county board and succeeded in its appeal." On appeal to the State Tax Board the judgment was reversed, and that judgment was sustained, the court observing (at *p.* 59) :

"Under section 39 of the Tax Act (*R. S.* 54:4-58;. *N. J. S. A.* 54:4-58) we are forbidden to set aside the tax for irregularity or defect in form or illegality in assessing, laying, or levying the tax, if in fact the prosecutor is liable to taxation in respect of the purpose for which the tax is levied. Such is the present case."

In *Clark* v. *Mulfórd* (*Supreme Court,*. 1881), 43 *N. J. L.* .550, a writ of *certiorari* issued to review a warrant for the sale of land for taxes, where the assessment had been increased without notice to the owner. The court held the increase to be illegal and that the assessment would be reduced to the valuation made by the assessor, "unless application is made, pursuant to the act of 1881, to this court, to fix a fair valuation" (as under *R. S.* 54:4-59; *N. J. S. A.* 54:4-59).

It is clear that in the instant case the Township of Hillsborough has invoked the statute, and has applied for the making by this board of a lawful assessment.

In *Manisloe Iron Works Co.* v. *Raritan Township* (*Supreme Court,* 1934), 12 *N. J. Mis. R.* 143; 170 *Atl. Rep.* 39, the statute was applied to this situation. A local assessor assessed certain machinery for taxes against Building Materials Corporation for the years 1926-1931. Discovering that the property belonged to prosecutor, he then made penciled changes upon his records, transferring the assessments to the latter. The taxes remaining unpaid, the property was sold, and a

review of the proceedings was sought. The assessment was affirmed under the curative provisions of the statute, and the court made what seems to us the dispositive answer to the contention here urged by petitioner, based upon lack of proper notice of the assessment complained of. The court said (at p. 146) :

"Nor can we regard such legislative enactment as confiscatory. The owner of property well knows that the same is subject to taxation, and is under a duty to make reasonable inquiry as to his taxes  *  *  *.

"Although the prosecutor could not appeal to the county board or other agency designed for the correction of errors, and, in fact, had no previous notice of the action taken, does not unjustly affect prosecutor, since a review in the court affords a full and effective remedy within the purview of the organic law. The law does not require that the prosecutor shall have a right to review by the State Tax Board. It is sufficient that he be not deprived of his property without due process of law."

And see *H. P. Varley Association* v. *McFeely (Supreme Court, 1937), 118 N. J. L.* 463; *193 All. Rep.* 787.

In the instant case, of course, petitioner has the present review to this board, in which it was granted every possible opportunity for adequate hearing on the merits, including the award of a commission for the taking of depositions of witnesses in North Carolina, and it will have the further right of review by *certiorari.*

If any doubt remained as to the applicability of the Musconetcong case, *supra,* to the precise situation here involved, it is dispelled by the application of *R. S.* 54:4-58 and 54:4-59; *N. J. S. A.* 54:4-58 and 54:4-59, by the Court of Errors and Appeals in the recent case of *Ridgewood Elks Holding Corp.* v. *Village of Ridgewood (Court of Errors and Appeals, 1941), 127 N. J. L.* 295; *22 All. Rep. (2d)* 266. In that case the taxing district had entered as exempt on its tax list for 1938 and 1939 a lodge building owned by prosecutor, and five acres of a fourteen acre tract upon which the building stood. The remaining nine acres were entered as taxable and tax bills were duly submitted to and paid by

the owner. The tax lists containing the entries described were approved and certified as correct by the county board of taxation. At some time thereafter, not clearly determinable from the printed state of the case, the assessor on his own motion and without any notice of the action to the taxpayer, made ink changes on the duplicates, cancelling the exemptions originally noted, and entering the property as taxable. Demand for the additional taxes thereby coming due for the years in question was made in August, 1940, and sale of the property for such taxes was held October 1st, 1940. A writ issued to review the sale and the assessments, and, upon its dismissal, an appeal was taken to the Court of Errors and Appeals. The taxing district resisted the appeal by invoking *R. S.* 54:4-58 and 54:4-59; *N. J. S. A.* 54:4-58 and 54:4-59, and urging the meritorious ground that, as of the assessing dates for the years in question, the property was lawfully subject to taxation and not entitled to exemption. The court held the statute applicable, found the property to have been properly subject to taxation in the first instance, and affirmed the judgment dismissing the writ.

A consideration of the full implication of the *Ridgewood* decision will serve to establish that the case *sub judice* is one, *a fortiori*, for the application of *R. S.* 54:4-58 and 54:4-59; *N. J. S. A.* 54:4-58 and 54:4-59. The result of the *Ridgewood* case is that the contents of the assessment list and duplicate, even after return thereof from the county board of taxation, approved as correct, can furnish no assurance to the taxpayer that the assessment of his property is to be that only which is found in the list, subject only to omitted property proceedings, as provided for in *R. S.* 54:3-20; *N. J. S. A.* 54:3-20. Under that section the last day upon which the Village of Ridgewood could have filed an application for the taxation of the building and land in question, for the year 1938, as omitted property, was December 1st, 1939. Yet the court held that resort to *R. S.* 54:4-58 and 54:4-59; *N. J. S. A.* 54:4-58 and 54:4-59 could effectively enable the taxing district to enforce collection of 1938 taxes on the property originally exempted for that year, by merely demanding additional taxes therefor, though subsequent to December 1st,

1939, *without the prerequisite of taking proceedings under section* 54:3-20, *with its barring time limitation, at all.* That being so, certainly the assessment of omitted property made by the Somerset County Board of Taxation, on November 22d, 1940, taken within the only time limitation specified in *R. S.* 54:3-20; *N. J. S. A.* 54:3-20, and in all other respects following the letter of the statutory provisions under the procedure specified in the first two sentences of the section, is efficient to effectuate a legal and subsisting assessment, amendable, if necessary, as to irregularities or illegalities under *R. S.* 54:4-58 and 54:4-59; *N. J. S. A.* 54:4-58 and 54:4-59, and subject to review, as here, on the merits and the amount of the tax lawfully leviable as of the assessing date.

Petitioner points to recent cases in which specifications of omitted property in complaints for the assessment thereof, before county boards of taxation, have been held insufficient and the proceedings dismissed. *Duke Power Co.* v. *Essex County Board of Taxation* (*Supreme Court,* 1937), 122 *N. J. L.* 589; 7 *Atl. Rep.* (*2d*) 409; *affirmed* (*Court of Errors and Appeals,* 1940), 124 *N. J. L.* 41; 11 *Atl. Rep.* (*2d*) 21; *Newark* v. *Essex County Board of Taxation* (*Supreme Court,* 1941), 127 *N. J. L.* 314; 22 *Atl. Rep.* (*2d*) 562; *Newark* v. *Essex County Board of Taxation* (*Supreme Court,* 1942), 127 *N. J. L.* 527; 23 *Atl. Rep.* (*2d*) 805. It urges that its research shows that counsel argued the applicability of *R. S.* 54:4-58 and 54:4-59; *N. J. S. A.* 54:4-58 and 54:4-59, in each of these cases and that the silence of the opinions of the court on the subject, in the face of such argument, implies that the curative statutes are not effective where the illegality complained of is a departure by the county board from the strict letter of the statute. In response to this we point out, firstly, that in every one of these cases, the procedure held defective by the courts was that taken under the second assessing method prescribed in *R. S.* 54:3-20; *N. J. S. A.* 54:3-20, and not, as here under consideration, the first, by resolution of the board, without prior complaint. Secondly, as an inferior statutory tribunal, we are bound to follow such adjudication by the upper court as specifically disposes of the precise situation before us, rather than debat-

able inferences from decisions not treating the point. Our present problem is the effect of R. S. 54:4-58 and 54:4-59; N. J. S. A. 54:4-58 and 54:4-59, on irregularities or illegalities (conceding, only for the sake of the discussion, that they exist in this case) in proceedings for the assessment of omitted property under R. S. 54:3-20; N. J. S. A. 54:3-20. The only adjudications that bear upon the point are *Musconetcong Iron Works* v. *Netcong, supra,* which treats it specifically, and *Ridgewood Elks Holding Corp.* v. *Village of Ridgewood, supra,* which applies the statute to·cure defective proceedings not taken under any statute, but having the effect of adding omitted property to the·tax rolls. These are decisions of the Court of Errors and Appeals, and declare, in terms or in effect, that omitted property proceedings in violation of the statutes are nevertheless curable under R. S. 54:4-58 and 54:4-59; N. J. S. A. 54:4-58 and 54:4-59. We conceive it our duty to follow these rulings in the present connection, if necessary, to determine the sums for which petitioner was lawfully subject to taxation by the Township of Hillsborough, rather than to draw uncertain inferences from the cases cited by petitioner, which in no instance cite or discuss R. S. 54:4-58 and 54:4-59; N. J. S. A. 54:4-58 and 54:4-59.

Petitioner attempts to reconcile all of the pertinent authorities on the basis that illegal actions of *assessors* or *collectors* in adding omitted property to the rolls, are curable under the statute, but that similar illegal actions by county boards of taxation are not curable, on the ground that the jurisdiction of such boards is strictly limited by the statutes. This distinction finds no support in any of the cases dealing with the curative statute, nor in its public policy. It·further proceeds upon a disregard of the fact that in adding omitted property to the tax rolls under R. S. 54:3-20; N. J. S. A. 54:3-20, and particularly when proceeding by resolution without prior complaint, the board is functioning *as the assessor of first instance,* and not as an appellate or revising body. It is acting in the place of either the collector or the commissioners of appeal, designated in section 28 of the act of 1903. See *Pamph. L.* 1906, *p.* 216, § 9. See, also, *Feindt* v. *City of Newark, New Jersey Tax Reports,* 1934-1939, *p.* 693. In the

making of the assessment of November 22d, 1940, the Somerset County Board of Taxation was acting in exactly the same way and under the precise provision of *R. S.* 54:3-20; *N. J. S. A.* 54:3-20, whose counterpart in section 28 of the act of 1903 was the basis for the action of the collector in the *Musconetcong* case, *supra*, where the predecessor statute to *R. S.* 54:4-58 and 54:4-59; *N. J. S. A.* 54:4-58 and 54:4-59 was deemed applicable to cure defects in the proceedings. We therefore conclude that petitioner has not disestablished the pertinency of the curative legislation.

Petitioner finally urges, in this connection, that this board is not a "court," within the purview of section 54:4-59, and therefore cannot undertake to act under its provisions, or under those of section 54:4-58, with which it is obviously cognate. We are of the opinion that the board is within the reference to "court," at least for present purposes, and that such a conclusion is strongly impelled by a consideration of the consequences of a decision to the contrary. In the first place, if the conclusions hereinabove first arrived at are sound, and it is the legislative intention that the illegalities, if any, here involved, should be amended to the end that petitioner be taxed for the year 1939 in such sum as it may be properly taxed, on the merits, that intention would be frustrated by a conclusion that the amendment may not be made by this board. This is for the reason that in the event of such conclusion by this board, assuming it to be correct, there would be no legal error warranting the issuance of a writ of *certiorari* in review, and the objective of section 54:4-59 would not find attainment. And secondly, it appears to be a reasonable assumption that the word "court" is not used in any technically restrictive sense in the statute, but as a generic term connoting all tribunals exercising judicial functions in any "proceeding," as well as any "action or suit," wherein a tax or assessment may be under review. The act is remedial in nature and should be liberally construed to accomplish its objective. *Dodge* v. *Love* (*Supreme Court,* 1885), 47 *N. J. L.* 436; 2 *Atl. Rep.* 810; *affirmed* (*Court of Errors and Appeals,* 1886), 49 *N. J. L.* 235; 9 *Atl. Rep.* 744. It can hardly have been the legislative intention that this board,

after full hearing of an appeal, should not have power to effectuate the policy of the statute, leaving the taxing district to find a way to get the matter before a "court," so that the statutory relief might be afforded. We therefore conclude that this board may amend any irregularity or illegality allegedly existing in this case, and we proceed to determine the matter on the merits.

It becomes our duty, accordingly, to determine from all the evidence in the case the valuation for which petitioner was lawfully assessable, subject to any proper allowance for exempt property, as of October 1st, 1938, the assessing date. At the outset we may say that the only satisfactory proofs before us as to the amount and extent of petitioner's holdings of intangible personal property were those offered by petitioner. The basis upon which respondent sought to establish the petitioner's ownership of cash in the amount of $8,143,159, on the assessing date, was, without discussing it here at length, incompetent and unreliable. We find from petitioner's unimpeached proofs that the extent of its holdings of intangible personalty, on October 1st, 1938, was as follows:

| | |
|---|---:|
| Cash in banks | $6,364,430.58 |
| Cash on hand | 11,962.35 |
| Notes, accounts and interest receivable | 5,005,460.21 |
| Stocks in other companies | 5,834,705.08 |
| Bonds of other companies | 83,079.00 |
| Bonds of North Carolina and of municipalities therein | 151,845.65 |

Respondent contends that there should be added to the foregoing list an item of good will, found in the fixed capital accounts of the company as listed in its statement filed with the Federal Power Commission, in the sum of $3,316,596.11. Petitioner's proofs are to the effect that this item does not represent any property or value, but that it is a mere bookkeeping entry, originating many years ago in a company which was merged into the petitioner, the item being carried forward, though not representing anything of value. The story of the origin of the item, which we do not here detail,

was reasonable and credible and corroborated the conclusions of petitioner's witness as to its lack of value. Respondent failed to come forward with proof in rebuttal, and it results that we must accept petitioner's proofs at face value. *General Motors Corporation* v. *State Board of Tax Appeals* (*Court of Errors and Appeals*, 1940), 125 *N. J. L.* 574. The item of good will is therefore disregarded.

Petitioner seeks to establish that the item for "notes, accounts and interest receivable," should be reduced to the extent of $1,474,529.79, on the ground that that sum represented amounts due on installment contracts for the sale of electric and other appliances, refrigerators, &c., the title being retained by seller until completion of payments, and that only the articles are taxable to petitioner, not the accounts. *Remington Cash Register Co.* v. *State Board* (*Supreme Court*, 1930), 8 *N. J. Mis. R.* 875; 152 *Atl. Rep.* 330, cited by petitioner in support of this proposition, does not so hold. It holds only that in such a situation, the conditional vendor is taxable for the articles. Nothing was said or involved with respect to the taxability of the receivables. The item in the instant case plainly represents debts absolutely owing to petitioner, and therefore taxable to it, even as all of its other intangibles, except those entitled to exemption under our statutes. No issue being raised as to the true value of any of these accounts, we take them at their face value.

We proceed to a consideration of petitioner's claims for exemption. These are as follows: (a) for every dollar of the property listed, as being property situated out of New Jersey, on which taxes were actually assessed and paid in the State of North Carolina, under the Machinery Act of that state, claimed to be exempt under *R. S.* 54:4-3.2; *N. J. S. A.* 54:4-3.2; (b) for a certain portion of the bank deposits, corporate stock and accounts receivable, as being property situated out of New Jersey, on which taxes were actually assessed and paid in the State of North Carolina, under the Revenue Act of that state, likewise claimed to be exempt under *R. S.* 54:4-3.2; *N. J. S. A.* 54:4-3.2; (c) for all of the shares of corporate stock listed, as being shares in foreign corporations, which corporations paid taxes in the state of their incor-

poration upon their property, this claim being also posited upon *R. S.* 54:4-3.2; *N. J. S. A.* 54:4-3.2, as construed in in *Trenton* v. *Standard Fire Insurance Co.* (*Supreme Court*, 1908), 76 *N. J. L.* 79; (d) for cash on hand, of $11,962.35, under *R. S.* 54:4-3.23; *N. J. S. A.* 54:4-3.23.

Before analyzing the claims for exemption, it becomes necessary for us to dispose of the contention of the respondent to the effect that the claims for exemption must be disallowed for the asserted reasons that they were filed out of time, and because of the failure of petitioner to enforce compliance with the terms of *subpœnas duces tecum* served upon its officers, calling for the production of its books, both before the county board and state board. We think neither of these grounds is tenable. The statute, *R. S.* 54:4-15; *N. J. S. A.* 54:4-15, is as follows:

"\* \* \* No allowance or deduction shall be made for personal property or securities claimed to be exempt from taxation, unless a sworn claim therefor shall be made, setting forth a detailed list of the securities and personal property claimed to be exempt, the dates when they were purchased, and that they were not purchased with intent to escape taxation. \* \* \* The governing body of a taxing district may regulate and fix the time within which statements of taxable property shall be made and delivered to the assessors."

This provision is clearly designed to apply only in the case of normal assessments in the regular course, not to assessments of omitted property, so far as the last sentence may be construed to fix a time limit within which such claims for deduction must be filed, at peril of loss of the exemption. We find no court case, and none is cited by counsel, as to the time within which claims for exemption must be filed in omitted property assessment cases. This board had occasion to consider the question in the case of *Feindt* v. *City of Newark, New Jersey Tax Reports,* 1934-1939, *p.* 693, and we there concluded, giving our reasons at length in the opinion of the board, that the claim was timely if filed at or prior to the hearing on the omitted assessment before the county board. That continues to be our view of the matter. We are of the further opinion that the claims are timely if filed prior to

the conclusion of the hearings on the assessment. In the present case, at the hearing by the county board on November 13th, 1940, when the only question for consideration was the amount of petitioner's cash, a full and detailed claim of exemption therefor was filed by petitioner. If this property was exempt, the claim for exemption was unnecessary, under the recent decision of the Court of Errors and Appeals in *MacPherson* v. *State Board* (*Court of Errors and Appeals,* 1942), 127 *N. J. L.* 599; 23 *Atl. Rep.* (*2d*) 582, holding that cash, where exempt, need not be claimed, not being the kind of property which is ordinarily purchased, within the intent of *R. S.* 54:4-15; *N. J. S. A.* 54:4-15. At the hearing before the county board on December 2d, 1940, with reference to the assessment of $21,953,125, petitioner again filed *its* sworn and detailed claim for exemption, respecting every item of its personal property claimed to be exempt. This filing, like the earlier one, was timely. We have examined the claim carefully, and find it a model of compliance with the pertinent statutes. To the extent that any of petitioner's property is lawfully entitled to exemption, the right thereto has been perfected by proper claim.

Nor are we impressed with respondent's request that we penalize petitioner by disallowing the claims for exemption, for failure of compliance with the *subpœnas duces tecum.* We are not warranted by any statute in taking such a step. Disobedience of any proper subpœna was punishable in an appropriate tribunal, and not collaterally by either the county board or by this board. It remains to consider the claims for exemption on the merits. We can at once dispose of the claim on account of the corporate stock in other companies. These are all foreign corporations. This exemption is well established by the construction of *R. S.* 54:4-3.2; *N. J. S. A.* 54:4-3.2 in *Trenton* v. *Standard Fire Insurance Co., supra.* The claim for exemption is satisfactorily corroborated in this regard by proof of the payment by each of the companies whose stock was held by petitioner, of taxes on the property of such companies, during the twelve months preceding October 1st, 1938. We may also readily determine the allowability of the exemption for cash on hand, of $11,962.35. This we

think is clear, under *R. S.* 54:4-3.23; *N. J. S. A.* 54:4-3.23. The fact that petitioner claimed for this sum under another statute; does not affect its right under the section referred to, since no claim had to be filed for this item at all. *MacPherson* v. *State Board, supra.*

·The issue is thereby confined to the question of the right to exemption for the cash in banks, $6,364,430.58, accounts receivable, &c., $5,005,460.21, and corporate and municipal bonds, of $151,845.65. The cash in banks is of course not exempt so far as *R. S.* 54:4-3.23; *N. J. S. A.* 54:4-3.23 is concerned, that being limited to moneys on deposit in ·banks doing business in this state. Petitioner's bank accounts are all in the States of North ·Carolina, South Carolina, and New York. What is urged by petitioner, however, is that all· of the property referred to is exempt under the terms of *R. S.* 54:4-3.2; *N. J. S. A.* 54:4-3.2, which reads as follows:

"The personal property owned by citizens or corporations of this state, situate and being out of the state, upon which taxes shall have been actually assessed and paid within twelve ·months next before October first, being the day prescribed by law for commencing the assessment shall be exempt from taxation under this chapter."

Two questions present themselves. 1. Are the bank accounts, the accounts receivable, or the bonds, or any of them, "situate and being out of the state," within the statute? 2. Were taxes actually assessed and paid upon these items, or any part of them? We shall deal with these questions in inverse order.

For satisfaction of the requirement of payment of taxes,· petitioner· relies upon assessments made against it in the State of North Carolina under two separate taxing statutes of that state, known, respectively, as the Machinery Act and the Revenue Act. The first of these acts is in effect a general property taxing statute, which, until the end of 1937, required the assessment for taxation of all real and personal property in the state, including intangibles having a business *situs* in the state, under that act. In the case of utility companies, the act requires the estimation by a state board of assessment of the value of all of the company's property,· real and· per--

sonal, wherever situate, the fixing of a value for the amount thereof located in the State of North Carolina, and the deduction from the latter of the assessed value of real estate and tangible personalty in the state, leaving an "excess value" for taxation. The taxation of this excess value, says petitioner, necessarily is an assessment upon all of its intangible personalty, and the payment of the tax thereon during the twelve months preceding October 1st, 1938, is contended to constitute a compliance with *R. S.* 54:4-3.2; *N. J. S. A.* 54:4-3.2. We are not satisfied that this is so. The statutory return for the year 1937 filed by petitioner with the North Carolina board, showed total book value of all assets, as of December 31st, 1936, of $140,008,903.95, with $86,066,821.53, or 61.47%, as situated in North Carolina. The company's comparative balance sheet statement, for the same date, reflects assets of $211,289,162.27, of which approximately $20,000,000 was in intangible personalty. The latter figure corresponds closely with the total amount of intangibles admitted by petitioner to have been owned by it on October 1st, 1938. Despite these figures, the North Carolina board estimated petitioner's total assets within that state, for assessment for the year 1937, at $50,000,000, leaving an excess value of $1,072,313 to be taxed under the Machinery Act, after deducting local assessments of real and personal property of $48,927,687. The taxation of this $1,072,313 is claimed by petitioner to represent the taxation by North Carolina of *all of its intangible personalty.* We think it apparent that $20,000,000 of of intangibles have not been taxed by an assessment of $1,072,313. Our statute exempts only property *"upon which"* taxes have been actually assessed and paid, &c. Constituting a voluntary renunciation by this state of the right to tax property of its citizens, the statute cannot be construed to allow an exemption of a single dollar not expressly and clearly provided for. Petitioner has not, and we think could not establish that the assessment of $1,072,313 was a tax on either the bank deposits of over $6,000,000, the accounts receivable of $5,000,000, the corporate stocks of almost $6,000,000, or the bonds of over $200,000. It is obviously a nominal "net worth" assessment. We are of the opinion that *R. S.* 54:4-3.2;

*N. J. S. A.* 54:4-3.2 requires that the exemption claimant lay his finger on specific property situate out of the state, and show how and when that specific property was assessed for taxation *ad valorem* out of the state. That requirement is not here met by the assessment under the Machinery Act.

Petitioner does satisfactorily show, however, assessments and the payment of taxes, during the twelve months prior to October 1st, 1938, under the Revenue Act of North Carolina, for the year 1937, upon bank deposits of $1,152,469, and upon accounts receivable of $1,540,628.72. Further tax payments on additional bank deposits, accounts receivable and securities, under the Revenue Act, made after October 1st, 1938, must be disregarded, under the express requirements of our exemption statute. The figures last stated, accordingly, would be the only exemptions which could be accorded on account of taxes actually paid on bank accounts and accounts receivable. The allowance of even these sums, however, is conditioned upon a finding, as a matter of law, that these accounts were "situate and being out of the state," within the intent and meaning of the statute. We turn to a consideration of this difficult problem.

It is elementary that choses in action such as the debts reflected by these bank deposits and accounts receivable, are considered to have their *situs* at the domicile of the creditor, which in this case is the State of New Jersey, and particularly at the petitioner's principal office in this state, the Township of Hillsborough. This being so, how can it be said that this property is situated in North Carolina, within the intent of the act? Petitioner's answer is that these intangibles have a business *situs* in North Carolina, within the development of that concept in the last generation, and exemplified in such cases as *Wheeling Steel Corp.* v. *Fox,* 298 *U. S.* 193; *First Bank Corp.* v. *Minnesota,* 301 *Id.* 234; *Farmers Loan and Trust Co.* v. *Minnesota,* 280 *Id.* 204, and recognized in this state in *Household Finance Corp.* v. *State Board of Tax Appeals (Supreme Court,* 1937), 119 *N. J. L.* 230; 196 *Atl. Rep.* 219. Conceding, as we think we fairly must, that these bank accounts and accounts receivable ·do have such a business *situs* in North Carolina as permits their taxation

in that state, we are confronted with the situation where this property has a *situs*, in the traditional sense, in this state, and a business *situs* in North Carolina, each justifying taxation, in the respective states of *situs*, so far as the present posture of constitutional law on the subject indicates. *Newark Fire Insurance Co. v. State Board*, 307 *U. S.* 313. Thus the blunt issue presented is as to whether it was the intention of the legislature, in enacting *R. S.* 54:4-3.2; *N. J. S. A.* 54:4-3.2 and its predecessor enactments, to accord the exemption to property having any kind of *situs* out of the state, which should result in taxation out of the state, or to restrict it to such personal property, owned by residents of this state, as was capable of having *situs* independent of the domicile of its resident owner, out of the state, as for example, tangible personalty, and in consequence thereof, subject to taxation there.

An examination of the historical background of the legislation should be had, for the purpose of inquiring as to the probable intention with which this type of exemption was originally provided for.

The earliest act of this type was *Pamph. L.* 1857, *p.* 475, as follows:

"All public stocks and other property, owned by residents of this state, which are subject to taxation in any other state, and for which such taxes shall actually be paid, shall be exempt from taxation under the laws of this state."

Revisions thereof prior to the Revised Statutes were *Pamph. L.* 1863, *p.* 502, providing:

"Residents of this state shall not be taxed for stocks and other property belonging to them out of this state, and upon which taxes shall be assessed and actually paid in any other state."

*Pamph. L.* 1866, *p.* 1078, exempting: "stocks and other personal estate owned by citizens of this state, situate and being out of this state," &c., and *Pamph. L.* 1903, *p.* 394, § 3(1), exempting "the personal property owned by citizens or corporations of this state situate and being out of the state," &c.

It will be noted that the 1857, 1863 and 1866 enactments extend the exemption to shares of stock specifically, and to other personal property generally. If the references to "other personal estate," and to "other property," in these acts, respectively, were intended to connote every type of personal property, intangible as well as tangible, the specific reference to stock was superfluous. Legislation is to be construed so that no part of it is superfluous or insignificant. *Beard* v. *Aldrich* (*Supreme Court*, 1930), 106 *N. J. L.* 266; 149 *Atl. Rep.* 57; *Steel* v. *Board of Freeholders* (*Court of Errors and Appeals*, 1916), 89 *N. J. L.* 609.; 89 *Atl. Rep.* 609; *General Investment Co.* v. *American Hide and Leather Co.* (*Court of Chancery*, 1925), 97 *N. J. Eq.* 214; 127 *Atl. Rep.* 529. It would thus appear that the intent was to exempt tangible goods and chattels taxed out of the state because situate there, although owned by residents of this state, and additionally to exempt stocks actually being out of the state, such property having begun at that time to be regarded as possessing some of the attributes of tangible property, for tax purposes. See *State Tax on Foreign-held Bonds,* 15 *Wall.* 300. Two early cases strongly support the view that the legislature did not intend to exempt intangibles like debts or choses in action, under this provision. In *Darcy* v. *Darcy* (*Supreme Court,* 1888), 51 *N. J. L.* 140; 16 *Atl. Rep.* 160; *affirmed* (*Court of Errors and Appeals,* 1889), 52 *N. J. L.* 222; 20 *Atl. Rep.* 319, the court had before it a claim that a mortgage owned by a resident of this state, on lands situate and taxed in Kansas, was exempt under the 1866 statute. The court held that the mortgage debt was situated in New Jersey, where the mortgagee resided, and that the specific reference to "stocks" indicated an intent to exclude mortgages from the scope of the Exemption Act.

It was later held that the subsequent deletion by the legislature of the word "stocks" did not have the effect of abrogating the exemption of this type of property, in a proper case, it being the view of the Supreme Court that the deletion had been made merely by way of revision and not for the purpose of changing the existing law. *Trenton* v. *Standard Fire Insurance Co., supra.*

Moreover, in the case of the *State* v. *Ross* (*Supreme Court,* 1852), 23 *N. J. L.* 517, is to be found cogent evidence of the fact that when the Exemption Act was originally adopted, the state of the law on the subject of the taxation of intangible personalty of a non-resident, was such that it cannot be reasonably supposed that the legislature was intending, by the act in question, to surrender the right of this state to tax the intangibles of one of its residents (except for stock) which might be subjected to assessment in another state. In that case the court was considering an assessment by the taxing district of Princeton, against a non-resident sojourning there, of certain bonds owned by him, issued by a New Jersey railroad company. The court held that the property was not taxable here, on the express ground that "property in action" (debts and choses in action) was properly subject to taxation only at the domicile of the owner, and not elsewhere. This being the then current view, there would seem to be little basis for doubt that in providing for an exemption of stocks and other personal estate situate and being out of the state, and actually taxed there, the legislature was not intending to include an exemption of intangibles, or "property in action," of residents of this state. There having since transpired no subsequent significant change in the statutory language, it cannot be presumed that the legislative intent has undergone any change in this regard.

The conclusion that, aside from stocks, the legislature intended only an exemption for tangible personalty situated out of the state, is supported by the consideration that tangible property was early regarded as taxable at the residence of the owner in this state, if and despite the fact that it was physically located out of the state. *Wheaton* v. *Mickel* (*Supreme Court,* 1899), 63 *N. J. L.* 525; 42 *Atl. Rep.* 843. The former existence of this legal view in this state furnishes a clue as to the principal type of situation which the predecessor of *R. S.* 54:4-3.2; *N. J. S. A.* 54:4-3.2 was designed to meet. There later developed the constitutional principle that the due process clause of the Fourteenth Amendment precludes state taxation of tangible personalty beyond its borders. *Frick* v. *Pennsylvania,* 268 *U. S.* 473.

One further word in this connection. It has been seen above that petitioner's position is that these intangibles are situated in North Carolina because they have a business *situs* there. The concept of business *situs* has developed only comparatively recently, and was unknown when our exemption statute was first enacted. At that time choses were deemed possessed of only one *situs*. To-day they may have two. It seems reasonable to suppose that if the legislature intended statutory language, drawn at a time when there existed only the traditional concept of *situs* at the creditor's domicile, to expand in significance to cover a new conception of *situs*, such as business *situs*, with the consequence of a newly created exemption from taxation of property clearly taxable here despite such business *situs* elsewhere (*Newark Fire Insurance Co.* v. *State Board*, 118 *N. J. L.* 525), it would have, at some time or other, expressly so stated in an amendment or supplement to the former act. The statement of the *dictum* by the Supreme Court in *New Jersey Insurance Co.* v. *State Board* (*Supreme Court*, 1937), 119 *N. J. L.* 245, 246, to the effect that deposits of "securities and other property" in another state, and taxed there, would be exempt, is not inconsistent with what we have said. This may refer to stocks, bonds or cash in specie, which as seen above, may be regarded as in the nature of chattels. Nothing is implied as to mere debts. In view of all of the foregoing, there is at the very least a serious doubt as to the existence of the exemption claimed by petitioner. To doubt, in matters of exemption, is to deny. *Dana College* v. *State Board of Tax Appeals* (*Supreme Court*, 1936), 14 *N. J. Mis. R.* 308, 310; 184 *Atl. Rep.* 412; *affirmed* (*Court of Errors and Appeals*, 1937), 117 *N. J. L.* 530; 189 *Atl. Rep.* 620; *Princeton Country Day School* v. *State Board of Tax Appeals* (*Supreme Court*, 1934), 113 *N. J. L.* 515, 517; 175 *Atl. Rep.* 136; *Carteret Academy* v. *State Board of Taxes and Assessment* (*Supreme Court*, 1934), 102 *N. J. L.* 525; 133 *Atl. Rep.* 886; *affirmed* (*Court of Errors and Appeals*, 1927), 104 *N. J. L.* 165; 138 *Atl. Rep.* 919; *Dwight School of Englewood* v. *State Board of Tax Appeals* (*Supreme Court*, 1935), 114 *N. J. L.* 594; 177 *Atl. Rep.* 888; *affirmed* (*Court of Errors and Appeals*,

1936), 117 *N. J. L.* 113; 187 *Atl. Rep.* 36. In *State* v. *City of Paterson (Supreme Court,* 1898), 61 *N. J. L.* 420; *affirmed (Court of Errors and Appeals,* 1900), 64 *Id.* 361, the matter is succinctly stated thus:

"\* \* \* in all statutes exempting private property from taxation, words descriptive of the property must receive the narrowest interpretation of which they are reasonably capable."

Consonant with this rule, we are constrained to hold that petitioner's accounts receivable and bank accounts were not "situate and being out of the state," within the intent of *R. S.* 54:4-3.2; *N. J. S. A.* 54:4-3.2. Thus the $1,152,469 of bank accounts and the $1,540,628.72 of accounts receivable, upon which petitioner paid taxes in North Carolina, as seen above, prior to October 1st, 1938, are not exempt from taxation for the year 1939. The remaining bank accounts and accounts receivable owned by it are of course taxable, not only for the reasons just stated, but because no taxes upon such property, in the sense intended by the act, are shown to have been paid or assessed in North Carolina or elsewhere.

Recapitulating, of petitioner's intangibles owned on October 1st, 1938, the following are exempt:

| | |
|---|---|
| Cash on hand | $11,962.35 |
| Corporate stock | 5,917,784.08 |
| Total exempt | $5,929,746.43 |

The following are taxable:

| | |
|---|---|
| Cash in banks | $6,364,430.58 |
| Notes, accounts and interest receivable | 5,005,460.21 |
| Corporate bonds | 83,079.00 |
| North Carolina and Municipal Bonds | 151,845.65 |
| Total taxable | $11,604,815.44 |

The assessments under review will be modified, and an assessment for personal property for the year 1939 ordered entered against petitioner in the sum of $11,604,815.44.

Judgment accordingly.