WILLIAM ZIEGLER, PROSECUTOR, v. CITY COUNCIL OF THE CITY OF HACKENSACK, RESPONDENT.

Submitted May 11, 1934—Decided August 2, 1934.

Before Justices TRENCHARD, HEHER and PERSKIE.

For the prosecutor, *Charles E. McCraith, Jr.*

For the respondent, *Donald M. Waesche.*

The opinion of the court was delivered by

PERSKIE, J. The prosecutor, an exempt fireman (*Pamph. L.* 1911, *ch.* 212, *p.* 444), and an honorably discharged war veteran (*Pamph. L.* 1907, *ch.* 14, *p.* 37), held the office of the chief of the fire department of the city of Hackensack, from December 29th, 1914 (date of appointment, December 7th, 1914), until October 18th, 1933, by virtue of an ordinance of that city, approved November 17th, 1914. On October 16th, 1933, his office was abolished. This resulted in his dismissal. No charges had been preferred against him, and he had no hearing. *Pamph. L.* 1928, *ch.* 240, *pp.* 418, 420.

On May 23d, 1933, the city of Hackensack adopted the municipal manager form of government. *Pamph. L.* 1923, *ch.* 113, *p.* 217, and the several supplements thereto and amendments thereof. The council, elected under the act, and the manager, Wilder M. Rich, appointed thereunder, took office on July 18th, 1933.

The *ex parte* affidavit of Rich, which by stipulation of counsel for the respective parties, might be used on the argument of this case, discloses that upon assumption of his duties that the financial condition of the city was in extremely bad condition. Checks had been issued in excess of $50,000 by the outgoing officials and there was only approximately $500 in the bank to meet the payments. The city had defaulted in the payments of its county and state taxes, approximately $450,000. The school teachers were paid up to July 1st, 1933, but in order to do this $95,522.16 of 1933 taxes were used to pay 1932 school obligations. There was due on maturing bonds of the city, on December 1st, 1933, $297,000, for the payment of which no provision had been made in the budget of 1933 and it was therefore apparent that the city would default on the due date. Other bonded obligations of the city were coming due in 1934, and, it was manifest to deponent that the city would be unable to meet them. That the police department was under the charge of a chief of police and the fire department was under the charge of a chief engineer. These departments had been

created by ordinance under the Hackensack Improvement Commission and they were not adaptable to the municipal manager form of government. Deponent observed that in both departments there was a lack of discipline and efficiency and that factionalism existed. The quarters in the police department were dirty and unkept and in need of repairs. The men of the fire department were not well trained and there was an apparent lack of respect for authority. The central fire station lacked order and tidiness. The Game-well fire alarm system was out of repair and it was necessary to detail two men from the fire department to overhaul the system. The emergency fire whistle at the police station was out of service due to lack of pressure in the air tanks, which condition was probably brought about by the fact that they were not regularly inspected.

That in order to bring about the most possible economies and to raise the standard of efficiency in both the police and fire departments deponent decided upon a complete reorganization of the city departments. This plan of reorganization contemplated the creation of a department of public safety with a director of public safety in charge of both the police and fire departments. The duties and responsibilities of the chief of police and the chief of the fire department were to be assumed by Rich in accordance with the Municipal Manager act and through the assistance of the director of public safety Rich intended to direct the affairs of these two departments of the government. By this method the position of chief of police and chief of the fire department were to be eliminated; and one line of authority from the city manager to the departments established in order to better co-ordinate and make possible a higher degree of efficiency in the performance of the work assigned to each division. Thus, co-operation was assured for any emergency if either the police or fire department, or both, were called upon to act.

Accordingly, on October 16th, 1933, the ordinance of November 17th, 1914, was repealed and on the same day the city adopted an ordinance embracing the plan of reorganiza-

tion, as above outlined, and also adopted the resolution complained of, abolishing the prosecutor's position. The resolution is as follows:

"Whereas Ordinance No. 209 has been adopted establishing departments and departmental divisions of the city government, determining and prescribing in general, the functions and duties in each department, and providing for the proper funds for City expenditures, and whereas certain changes in the organization plans for the Division of Police and the Division of Fire are necessary for the proper functioning of the City Government in accordance with the plan outlined, Now, therefore, be it Resolved, that the position of Director of Public Safety be created at a salary of $270 a month for the remainder of the fiscal year ending December 31st, 1933, said salary to be payable semi-monthly. Further Resolved, that the position of Chief of Police and Fire Chief be and they are hereby abolished."

Such reorganization, it is stated, has accomplished two results: First, it has reduced the salaries in these two departments and it has produced greater efficiency and harmony throughout both organizations, and second, it has put a stop to all waste and extravagance on the part of either or both departments.

Although it is not at all helpful, yet, there is some proof that the salary of employes, generally, after January 1st, 1934, were increased. Not a word appears as to which employes received an increase or the amount thereof. True, that the number of employes of the two departments were only decreased by one in number, but, it is also true and it is not denied that the change effected resulted in an actual saving of the police and fire department combined of approximately $30,000 a year; it has produced greater efficiency and harmony in both departments and has put a stop to waste and extravagance in either or both of said departments. The change was one concerning the regulation of the internal affairs of municipal departments of the municipality.

Chief Justice Brogan, in *Blair* v. *Brady*, 11 *N. J. Mis. R.* 854; 168 *Atl. Rep.* 669, 670, held:

"The court will not substitute its judgment on matters of this kind that concerns the regulations of the internal affairs of municipal departments for the judgment of those selected by the people and charged by law with the duty of regulating such affairs, in the absence of a clear showing of bad faith."

There is no such showing of bad faith in the instant case.

Nor does the fact that the prosecutor is an exempt fireman and an honorably discharged veteran prevent the abolition of his position, where the same is done, *bona fide,* in the interest of economy. *Reck* v. *Board of Commissioners of North Bergen,* 10 *N. J. Mis. R.* 962; *affirmed,* 110 *N. J. L.* 173. The proof fully justifies the conclusion that the action taken and complained of was taken in good faith and in the interest of economy.

It is next urged that since the office of fire chief was created by ordinance it could not be abolished by an instrument of lesser dignity; by a resolution.

It is, undoubtedly, true that there is an abundance of authority holding that an ordinance cannot be amended, repealed or suspended except by an act of equal dignity. *Am. Malleables Co.* v. *Bloomfield,* 83 *N. J. L.* 728, 734. But, in the instant case the office was created by virtue of the ordinance, under date of November 17th, 1914, and the appointment of the prosecutor to that office was made by nomination at a meeting of the Hackensack Improvement Commission. (*Exhibit P-2.*) The abolition of the office was effected by a repeal of the ordinance creating it; the adoption of a new ordinance (No. 209) and by the further adoption of the resolution in question.

The procedure followed in the case at hand is, substantially, the procedure that was followed in *Reck* v. *Board of Commissioners of North Bergen, supra,* and affirmed by the Court of Errors and Appeals.

We have considered all other points raised and argued and find them to be without merit.

The writ is dismissed, with costs.