PRINCETON COUNTRY DAY SCHOOL, AN INCORPORATED ASSOCIATION NOT FOR PECUNIARY PROFIT, PROSECUTOR, v. THE STATE BOARD OF TAX APPEALS AND TOWNSHIP OF PRINCETON, A MUNICIPAL CORPORATION, DEFENDANTS.

Submitted May 11, 1934—Decided October 5, 1934.

Before Justices TRENCHARD, HEHER and PERSKIE.

For the prosecutor, *Vandewater & Manser* (*William C. Vandewater*, of counsel).

For the defendant township of Princeton, *Louis Gerber* (*John Oswald*, of counsel).

The opinion of the court was delivered by

TRENCHARD, J. The prosecutor of this writ, the Princeton Country Day School, is a corporation organized in May, 1926, under "An act to incorporate associations not for pecuniary profit." *Pamph. L.* 1898, *p.* 422. Prior thereto it existed as a voluntary association, having been created as such in 1924.

The defendant township of Princeton levied an assessment for the year 1933 upon the property of the prosecutor, consisting of land and improvements, at a valuation of $43,800. An appeal was taken to the Mercer county board of taxation, which, after hearing, was dismissed. An appeal was then taken to the state board of tax appeals which affirmed the action of the county board. This writ brings up for review the judgment of the state board.

The prosecutor (hereinafter called the "School") insists that it is entitled to exemption from taxation by reason of section 203 (subdivision 4) of the General Tax act of 1918, as amended by chapter 372 of laws of 1931, page 904. The statute reads:

"The following property shall be exempt from taxation under this act namely: * * * All buildings actually used for colleges, schools, academies or seminaries; * * * the land whereon any of the buildings hereinbefore mentioned are erected, and which may be necessary for the fair enjoyment thereof, and which is devoted to the purposes above mentioned and to no other purpose and does not exceed five acres in extent; * * * provided, however, in case of all the foregoing, that said buildings, or the lands on which they stand, or the associations, corporations or institutions using and occupying the same as aforesaid, are not conducted for profit, except that the exemption of the buildings and

lands used for charitable, benevolent or religious purposes shall extend to cases where the charitable, benevolent or religious work therein carried on is supported partly by fees and charges received from or on behalf of beneficiaries using or occupying the said building; provided, the building is wholly controlled by and the entire income therefrom is used for said charitable, benevolent or religious purposes; * * *."

Now to merit exemption from taxation under that act the burden is upon the person claiming the exemption to adduce facts bringing his case within the terms of the statute granting the exemption. *Carteret Academy* v. *State Board,* 102 *N. J. L.* 525; *affirmed,* 104 *Id.* 165; *Blair Academy* v. *State Board,* 6 *N. J. Mis. R.* 498; 141 *Atl. Rep.* 789; *affirmed,* 106 *N. J. L.* 556; 146 *Atl. Rep.* 912; *Y. W. C. A.* v. *Pelham,* 9 *N. J. Mis. R.* 196; *affirmed,* 108 *N. J. L.* 553.

All exemptions from general taxation, being in the nature of a renunciation of sovereignty, must invariably be construed most strictly against the person claiming the exemption, and can never be permitted to extend beyond what the terms of the concession clearly require, and in case of doubt is determined in favor of the rule which subjects all property to a just share of the public burdens. *Mausoleum Builders of New Jersey* v. *State Board of Taxes,* 88 *N. J. L.* 592; *affirmed,* 90 *Id.* 163; *Freese* v. *Woodruff,* 37 *Id.* 139; *Rosedale Cemetery Association* v. *Linden,* 73 *Id.* 421; *In re Jane Ann Gopsill,* 77 *N. J. Eq.* 215.

As this case is presented and argued the only question is this: Is the school a charitable and benevolent institution not conducted for profit? The school contends that it is, and the township contends that it is not.

Testing the school's case by the foregoing rules it is evident that its claim to exemption must fail.

The school's case is supported solely by certain documentary evidence and the testimony of the chairman of the board of trustees. Thereby the situation as of the taxing date appeared to be this: The school was then and had been since May, 1926, a corporation organized and existing under an act to incorporate associations not for pecuniary profit. Originally it was an association fostered by certain persons who in 1924

"felt the necessity of establishing there a private school for boys between the ages of ten and fifteen years." Members of the original organization borrowed money on their individual credit to begin business in a leased property by endorsing a note in bank. During the year 1928 forty or fifty boys attended the school, with the prospect of an increase, and it was deemed necessary to move to new and larger quarters. Accordingly, a long term lease was obtained from Princeton University on certain university lands, and the school erected thereon a new building. A leasehold mortgage for $40,000 was given to the university. To finance the construction of the building the sum of $54,000 was raised from friends and parents of the boys in the school by issuing so-called "debenture bonds." Actually they were promissory notes and will hereafter be referred to as notes. About sixty boys attended the new day school on its completion in 1930. Later the school applied to the university for a deed in fee-simple for the lands upon which the school stood. The deed was given, the leasehold mortgage was canceled, and a new mortgage for $40,000 was given by the school to the university. That deed contained a restriction that the property should not be used for any purpose whatsoever other than that of a private school. Contemporaneously with the execution of the deed the school executed an agreement with the university, which the chairman of the board, a witness, described as "an opportunity to have first chance to buy it back at a proper figure." In it the school agreed that it would not sell or convey the property to another, without first offering the same to the university at a price to be fixed by arbitrators, and in case the university did not desire to purchase, the school should be free to convey the property to any person or corporation, subject, however, to restrictions in the deed. That agreement was not recorded. For some time prior to and at the time the assessment in question was imposed there were no profits from the school over and above the cost of operation. But it was more than "self-supporting" at a time when it received no donations for a three-year period, during which time interest was being regularly paid to the mortgagee; and at least until April 15th, 1931, holders of the notes were receiving interest on

their investments, and no application was then made for exemption from taxation. Nothing in the testimony tends to show any significant change in the status of these obligations. They were and still are considered outstanding liabilities of the school although not now producing any income. About $10,000 of original issue of notes was canceled by gifts, but since that date (October 1st, 1931) new notes in the amount of $1,250 at par were issued. At least ten out of the sixteen members of the board of trustees own and hold the outstanding notes. These were to be redeemed by future profits, if any. There are two rates for pupils: $400 a year generally, and a special rate of $300 for those whose parents are connected with the university or are teachers in Princeton schools. The teachers of the school receive moderate salaries, apparently somewhat larger than those paid in the public school system.

Now in view of that evidence and under our cases we think that it cannot be said properly that this school is a charitable or benevolent enterprise not conducted for profit, but on the contrary it must be said that it was and is conducted for the purpose of making a profit.

The mere fact that the operation of the school at or about the time the tax was imposed, did not result in profit, is not controlling, since it appears that at other times it did result in profit and was and still is conducted for the purpose of making a profit, and had a commercial aspect. *Princeton* v. *State Board,* 96 *N. J. L.* 334; *Bancroft School* v. *State Board,* 10 *N. J. Mis. R.* 656. It paid interest on its mortgage, and interest on its notes was paid up to April 15th, 1931, whereby certain members of its board of trustees who owned the notes were receiving profit from their investments.

The mere fact that the school is organized under the act to incorporate associations not for pecuniary profit is not conclusive, since the proofs show that it was nevertheless conducted for the purpose of making a profit. *Carteret Academy* v. *State Board of Taxes and Assessment, supra; Montclair* v. *State Board of Equalization of Taxes,* 86 *N. J. L.* 497; *affirmed,* 88 *Id.* 374. As we have pointed out, the operation of the school for several years produced some profit which was

used in the payment of interest on the mortgage and the notes, some of the latter of which were held by the trustees. No doubt the school may again produce profit. Such certainly is the purpose, and if there should be a profit, either from the operation of the school or the sale of the property, it would be used to reduce its indebtedness on the notes in the hands of the trustees.

We think, as the state board thought, that this case is plainly controlled by *Carteret Academy* v. *State Board, supra,* which among other things held: "Exemptions from the burdens of taxation, which the great masses of the people are called upon to sustain, as a requisite of civil government, are only favored in legislation upon the theory that the concession is due as a *quid pro quo* for the performance of a service essentially public, and which the state thereby is relieved *pro tanto* from the necessity of performing * * * and without that concurring prerequisite, an exemption becomes essentially a gift of public funds at the expense of the taxpayer, and indefensible both under our public policy of equal taxation, and our constitutional safeguard against illegal taxation."

As we have pointed out, the evidence demonstrates that the school originated as a *private* school, and has ever since continued to be (as the chairman of the board testified) "a *private* school and is open to boys that want an intensive training for collegiate work," and "its scholastic requirements are higher than those of public schools."

While no pupil has been denied admission to the school, its students appear to be confined to a very limited class, largely local and exclusive, no special effort being made to secure pupils generally, and a special lower rate of tuition being given to students whose parents are teachers in Princeton. Admittedly it was a *private* school, and it seems clear that it was never intended to serve the general public, but only a select group of students.

Our conclusion upon the whole is that the school has not made out its claim for exemption from taxation, and that the judgment of the state board must be affirmed. It is so ordered.