BYRON R. CHRISTIE, WILLIAM HINTENBERGER, MICHAEL BRODA AND JOHN CUOCO, PROSECUTORS, v. MAYOR AND COUNCIL OF THE CITY OF GARFIELD, BERGEN COUNTY, NEW JERSEY, A MUNICIPAL CORPORATION, RESPONDENT.

JOHN A. DWYER, PROSECUTOR, v. MAYOR AND COUNCIL OF THE CITY OF GARFIELD, BERGEN COUNTY, NEW JERSEY, A MUNICIPAL CORPORATION, AND JOSEPH J. NOVACK, CITY CLERK OF THE CITY OF GARFIELD, RESPONDENTS.

Submitted January term, 1935—Decided April 9, 1935.

Before BROGAN, CHIEF JUSTICE, and Justices PARKER and BODINE.

For the prosecutors, *Richard J. Baker.*

For the respondent, *Joseph F. Matisovsky* (*Robert Carey, Harry Lane* and *Joseph F. Matisovsky,* of counsel).

BROGAN, CHIEF JUSTICE. The writ of *certiorari* in the instant case was allowed to review a resolution and ordinance of the governing body of the city of Garfield which accomplished the demotion or reduction in rank of the prosecutors as follows: Byron Christie, from police captain to sergeant of police; William Hintenberger, from captain to sergeant of police; John Cuoco, from lieutenant of detectives to patrolman; Michael Broda, from lieutenant to sergeant of police, and John A. Dwyer, from desk captain to desk sergeant. The last demotion was accomplished by ordinance; the preceding demotions by resolution.

It appears that Christie was promoted from sergeant to captain; Hintenberger, from sergeant to captain; Broda, from sergeant to lieutenant; Cuoco, from patrolman to lieutenant; Dwyer, from sergeant to captain, all on the same date, December 28th, 1931.

At the time these resolutions were presented there were thirty-six men in the police department, fifteen of whom were superior officers of one class or another above the grade of patrolman.

In the return to the writ it also appears that prior to the adoption of the resolutions and ordinance complained of, a survey of the police department was made by the members of the safety committee. In the report submitted, the committee called attention to the promotions of December 28th, 1931, and further pointed out that the personnel of the department consisted of a chief, deputy chief, four captains, five lieutenants, four sergeants, and twenty-one patrolmen; that the number of superior officers made "the police department top-heavy;" that because of the great number of superior officers, the department is "inefficient and patrol duties imperfectly performed;" that there was no necessity for so many superior officers; that the increased cost entailed by the promotions in question was unnecessary and that the financial condition of the city didn't warrant the needless expense. The committee then, as the report states, in the interest of efficiency and for purposes of economy, recommended that the officers in question be reduced to the respective ranks occupied by them prior to their promotion of December 28th, 1931.

It further appears that in the month preceding the action of the governing body in making these changes, but subsequent to the report of the safety committee, the officers in question offered, for the year 1934, to "donate the amount of the additional compensation" over and above what they were receiving prior to their promotion, to the city of Garfield, or, to put it another way, to waive, for the year 1934, the amount of the increase in their compensation over and above what they had received in their previous status. No action was taken by the municipality on this offer.

Depositions were taken after the allowance of the writ. The reasons for reversal challenge the resolution and ordinance on several grounds, three of which are argued.

The first point made is that the demotions were not made for reasons of economy. It will be noted at the outset that there is no charge of unjust discrimination made. It is not asserted that the prosecutors were older in service in the respective ranks from which they were demoted than others of the department who were unmolested. It is obvious that the demotions which reduced the several prosecutors to lower rank and consequent lower salaries did effect an economy— just how much is not stated. We may fairly assume that the pay of a captain is greater than that of a sergeant and so on. The fact that the prosecutors offered to waive the excess or donate it to the use of the municipality is of no great materiality. The offer to waive was limited to the year 1934, and is of course a gratuitous one and not based upon any legal consideration, but be that as it may, it is difficult to understand how it can successfully be argued that the demotions did not accomplish some economy in the municipal expenditures. That a decrease in the cost of the department results in an economy of money is a self-evidence fact. This brings us to the second and third points, viz., that the demotions were not made to improve efficiency and were not made in good faith or for the betterment of the public service.

As to the second reason, it will be remembered that a survey was made of the police department. It is not easy to perceive how with a total force of thirty-six men, efficiency should require that fifteen of them should hold superior rank for the regulation and command of twenty-one men doing patrolman's work. Common sense leads one to the opposite conclusion. Our examination of the testimony, particularly the excerpts pointed out in the brief filed on behalf of the prosecutors, does not at all convince us that this reduction in the number of superior officers would not make for greater efficiency.

As to the final point that the municipal action was not taken in good faith, we can only say that there is nothing in the case before us that persuades us that the action taken

was the result of a determination to persecute, harass or punish the men thus reduced in rank.

On *certiorari,* as in all other cases of a civil nature, the burden is upon the moving party to prove the merit of his cause by a preponderance of the evidence. The evidence before us does not persuade us that this has been done. This is essentially a fact case and in reviewing the facts it seems to us manifest that the municipal action under review was taken in the interest of economy and efficiency. If such action was taken in good faith, and from the evidence we cannot find to the contrary, it was a legitimate exercise of the municipal power. *Harker* v. *Bayonne,* 85 *N. J. L.* 176; 89 *Atl. Rep.* 53; *Ziegler* v. *Hackensack,* 113 *N. J. L.* 215; 174 *Atl. Rep.* 199. "The court will not substitute its judgment on matters of this kind that concern the regulation of internal affairs of a municipal department for the judgment of those selected by the people and charged by law with the duty of regulating such affairs, in the absence of a clear showing of bad faith. *Blair* v. *Brady,* 11 *N. J. Mis. R.* 854; 168 *Atl. Rep.* 668.

The respondents are entitled to judgment and the writ will be dismissed with costs.