STATE BOARD OF TAX APPEALS.

BUXTON COUNTRY DAY SCHOOL, INC., PETITIONER, v. TOWNSHIP OF MILLBURN, RESPONDENT.

Decided July 2, 1940.

For the petitioner, *Danforth Geer, Jr.*

For the respondent, *Reynier J. Wortendyke, Jr.*

QUINN, President. This appeal brings before us the 1938 assessment levied by the township of Millburn upon the buildings, land and personal property owned by petitioner and used by it in the operation of the educational institution hereinafter described. An appeal to the Essex County Board of Taxation, praying cancellation of the assessment, was dismissed.

The appeal is based upon the contention, urged by petitioner and denied by respondent, that the property is actually used for a school not conducted for profit, within the intent of *P. L.* 1918, *ch.* 236, § 303 (*R. S.* 54:4-3.6; *N. J. S. A.* 54:4-3.6). It is not disputed that on the assessing date the building was in use as a school, but it is specifically denied by the township that it was "not conducted for profit," within controlling adjudications of the courts.

An application of the law to the facts in cases of the type herewith presented, requires a full and exhaustive evaluation

of the background, auspices, aims, financial set-up and operation of the particular institution involved, and no one circumstance or set of circumstances can control the determination of the fact of operation for profit in a particular case. *Dana College* v. *State Board of Tax Appeals* (*Supreme Court,* 1936), 14 *N. J. Mis. R.* 308; 184 *Atl. Rep.* 412. In this connection our courts have stated at different times, distinctly differently shaded tests for "operation for profit" of schools. In *Institute of Holy Angels* v. *Bender* (*Supreme Court,* 1909), 79 *N. J. L.* 34 (at *p.* 36); 74 *Atl. Rep.* 251:

"The school must be conducted for the purpose of making a profit, *i. e.,* as a commercial enterprise, in order to be deprived of its exemption. The argument is quite as clear in the case of the charge for tuition as in case of the charge for board. Unless the tuition charges are so fixed as to evince a purpose to make a profit over and above the cost of tuition, the school is exempt. Princeton University and Rutgers College, like all our endowed institutions of learning, make a charge, sometimes not an inconsiderable charge, for tuition; and it is quite probable that in individual cases the tuition fee may exceed the actual cost of the instruction; yet no one would suggest that either institution was conducted for profit. The reason is that such institutions upon the whole give more than they get, and make up for the deficiency of the tuition fees to pay for the actual cost of the instruction, in part by the self-sacrificing devotion of the teachers, and in part by the bounty of past generations. Such appears to be the aim of the present prosecutor. The school is conducted by a religious sisterhood; the teaching sisters receive no salary; some of the pupils pay no tuition, some pay less than the full charge. The receipts do not suffice to meet the expenses, and the prosecutor depends upon donations to meet the deficiency."

In *Borough of Princeton, &c.,* v. *State Board of Taxes and Assessments* (*Supreme Court,* 1921), 96 *N. J. L.* 334 (at *p.* 339); 115 *Atl. Rep.* 342 (case of Miss Fine's School):

"The question being whether the school is 'conducted for profit,' within the meaning of the act, the test is not whether

there is or may be a profit, but whether the school is conducted for the purpose of making a profit; that is to say, whether the charges for tuition and board are fixed with the intention of yielding a profit over and above the actual cost. *Institute of Holy Angels* v. *Bender,* 79 *N. J. L.* 34.

"In the case of a day school [such as the one now in question], unless the tuition charges are so fixed as to evince a purpose to make a profit over and above the cost of tuition, the school is exempt.

"In the present case the evidence shows conclusively that the charges are not fixed with the intention of yielding a profit. It shows that the school is supported in part by an endowment and gifts from friends, and that the charges for tuition are much lower than other schools of like character. It shows that in fact the school did not yield a profit, but was conducted at a loss."

But in each of the following cases the test for exemption was stated as consisting in whether or not the purposes and objects of the school are "fundamentally charitable or philanthropic." *Dwight School of Englewood* v. *State Board, &c.* (*Supreme Court,* 1935), 114 *N. J. L.* 594; 177 *Atl. Rep.* 888; *Princeton Country Day School* v. *State Board* (*Supreme Court,* 1934), 113 *N. J. L.* 515; 175 *Atl. Rep.* 136; *Bancroft School* v. *State Board* (*Supreme Court,* 1932), 10 *N. J. Mis. R.* 656; 160 *Atl. Rep.* 390; *Carteret Academy* v. *State Board* (*Court of Errors and Appeals,* 1923), 98 *N. J. L.* 868; 120 *Atl. Rep.* 736, and (*Supreme Court,* 1926), 102 *N. J. L.* 525; 133 *Atl. Rep.* 886. It is significant that in each of the cases cited in this paragraph exemptions were denied, whereas in those first cited, they were allowed. It appears to us that all of the cases cited were decided, not by facile application of the difficult criterion as to whether a particular school was "fundamentally charitable or philanthropic" (Princeton University, undoubtedly entitled to exemption from taxation, could hardly be described as essentially charitable, though philanthropic in a general sense), but upon a thorough consideration of whether the institution gave to the public at large substantially more than it received, "as a public work

of service to the state, without expectation of remuneration," considering the nature of the inspiration for its inception, the calibre and scholarship of its faculty and leaders, the scale of its fees, the extent of its acceptance of free students, its freedom from expensive exclusiveness, the moderateness of the compensation of its faculty, the incidence of self-abnegation rather than substantial pecuniary return to its founders and managers, and such other circumstances as would contribute to an understanding of whether the prime motivation for the carrying on of the enterprise was that of public service or private emolument.

An examination of petitioner's application must be undertaken in the light of all of the foregoing. From its inception, Buxton Country Day School has been the result of the enterprise and organization of Mrs. Ellen Geer, its director. It was incorporated in 1929 as a stock company under the General Corporation act, the form of the incorporation contributing to the failure of its application for exemption from payment of 1931 taxes on its property. *Buxton Country Day School, Inc.*, v. *Township of Millburn* (*State Board Tax Reports* 1912-1934, *p.* 542). In 1935 the school was reincorporated as an association not for pecuniary profit, at that time receiving by conveyance all of the property of the former stock company. These transfers were subject to a mortgage of $12,000 placed on the buildings by the stock company with The Howard Savings Institution. The new corporation also assumed a mortgage of $11,000, held by the Summit Trust Company, which Mrs. Geer and her husband had previously placed on their own home for the purpose of constructing buildings for the school, and likewise assumed three unsecured loans, the proceeds of which were also used for school buildings, held by Mr. Bentley W. Warren, Mrs. Warren and Mrs. Lillian Harmon, in the sums of $10,000, $7,500 and $2,500, respectively. The Warrens are the parents of Mrs. Geer, and have continuously waived interest upon their loans. The land upon which the buildings stand was the free contribution of Mrs. Geer, personally, to the corporation, she retaining no interest in it of any kind.

The stock corporation by-laws did not provide for the payment of dividends, and none have ever been paid. Mrs. Geer, who has devoted her full time to the school since its inception, has never received any financial remuneration from it whatever, being able to devote her efforts thereto gratuitously through the financial support of her husband. The Geer family has, furthermore, contributed an average of $1,000 per annum to make up for the operating deficit of the institution, exclusive of the waiver of interest by the Warrens upon loans aggregating $17,500.

Mrs. Geer's original organization of the school was the result of observations made by her of the effectiveness and growth of progressive methods in elementary education in schools fostered by private charity, free from the restrictions attending educational experiment in the public schools. She determined to devote her time and such financial resources as she could muster to the establishment of a laboratory for experimentation in progressive education, through the medium of a private school. She has since continued the operation of the petitioner institution toward the objective outlined, despite offers to undertake similar work elsewhere, attended by the financial compensation which petitioner has never given her. She testifies that a number of specific projects in music, art and dramatics developed at Buxton, have been adopted by other schools, public and private. Public school teachers are invited to visit the school, and to observe at first hand the methods employed, which methods were described and exemplified at length at the hearing.

The Buxton School accommodates 142 pupils, who pay from $125 to $475 for their tuition. In the 1937-1938 school year, seventeen of the students were awarded scholarships aggregating twelve per cent. of the tuition income, which increased to a total of twenty-seven students the following years, receiving scholarships equal to twenty-five per cent. of the tuition income. Compensation to teachers at the school averages between $1,500 and $1,800 per year, which is less than the general public school average of compensation to teachers. For each of the school years referred to, the school

operated at a loss, which was made up by the Geers, parents of students, and other friends of the school.

Petitioner emphasizes the availability of its curriculum to students of every economic class, so far as its facilities will permit, and its studied effort to keep itself free from exclusiveness in the social sense, but unique in the sense of its development of a contribution to progressive education.

It appears to us beyond question that the school is not conducted for profit, and that it qualifies for exemption from taxation, under the authority of *Mayor of Princeon* v. *State Board,* cited *supra.* The assessment appealed from is canceled.