34 N.J. Super. 449 (1955)
112 A.2d 608
ANTONELLI CONSTRUCTION, INC., A NEW JERSEY CORPORATION, PLAINTIFF,
v.
LESTER W. MILSTEAD, BUILDING INSPECTOR, SYLVESTER B. BILLBROUGH, JOSEPH MENNITE, CHARLES R. STEVENSON, JR., ALEXANDER SCHWAN, JOSEPH P. LONG AND ROBERT U. CASSEL, MAYOR AND COMMON COUNCIL OF BOROUGH OF PAULSBORO, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided March 2, 1955.
*452 Mr. Donald R. Taggart, attorney for the plaintiff.
Mr. William B. Kramer, attorney for the defendants.
HANEMAN, J.S.C.
The plaintiff herein is the owner of Lots 14 and 16 in Block 8 on Plan of Lots of the Paulsboro Home Site Development Co., made by Joseph R. Moorland, C.E., situate in the Borough of Paulsboro, County of Gloucester and State of New Jersey.
On or about January 29, 1954 plaintiff, through its agent, Angelo Antonelli, orally submitted detailed plans to the defendant Lester W. Milstead, building inspector of said borough, in furtherance of a request for a building permit for a row of houses consisting of four individual units. No formal written application for such a permit was ever made by plaintiff.
The ordinance under which the building inspector was appointed provided, as far as here pertinent, as follows:
"Section 6. Duties. The Building Inspector, upon being provided with plans and specifications, and after receipt of proper applications, shall examine the plans and specifications, and if they are satisfactory he shall mark his approval upon them. When the plans are so approved the Borough Clerk shall issue the permit."
Although there was not submitted at that time a separate instrument which could be deemed to be specifications for said building enterprise, the building inspector admitted that there was sufficient information delineated on said plans to serve as specifications and thereby fulfill the requirements under the ordinance hereafter referred to. Upon the presentation of the plans, Antonelli was advised by the building inspector *453 that in no event would he issue a permit, since he had been advised by the mayor and common council to issue no further permits for row houses.
The plans called for a construction which not only conformed to the requirements of the building code, but exceeded the minimum requirements thereof. The building inspector further stated that he not only refused to issue such a permit but he refused as well to give the plaintiff an application blank and would not have permitted, in any event, the formal filing of plans and specification with him.
The directions to the building inspector were the result of a series of actions theretofore taken by the common council on June 2, 1953. The minutes of the governing body in this connection disclose the following:
"Mr. Higgenbottom presented petition signed by 106 residents of Swedesboro, Paul and Thompson Avenues, protesting against any housing projects by the Lynn-Built Homes Company on the George Meade Tract because of the present drainage system on Paul and Thompson Avenues and the expense of enlarging the sewer disposal plant. Also the burden it will put on the school system.
Several members of the delegation spoke concerning their opinion, among them Mr. Higgenbottom, Mr. Saul, Mr. Jordon, Mr. Fletcher and Mr. Gray. It was the opinion of these people that the problem of drainage should be solved first before any new homes would be built that would aggravate the problem.
Mr. Gatuso, representing the Lynn-Built Homes Company, and Mr. George Meade and Mr. Barron explained their viewpoint on the project.
Cassel moved, Long seconded that Engineer Conover be instructed to make a study of the drainage problem in the area of Thompson Avenue and Paul Avenue and submit a plan for removing the surface water and to execute the plan before we act any further on the plans for the Meade tract.
The vote: Adams, Nay. Cassel, Yea. Long, Yea. Mennite, Nay. Schwan, Nay. Stevenson, Nay. The motion was lost.
Schwan moved, Stevenson seconded that the Borough Engineer, Conover, be authorized to make the necessary survey of the entire area and the Meade tract and submit to Mayor and Council the cost of remedying the drainage problem.
The vote: Adams, Yea. Cassel, Nay. Long, Nay. Mennite, Yea. Schwan, Yea. Stevenson, Yea. Carried.
Schwan moved, Cassel seconded, that row houses be prohibited in the Borough of Paulsboro.
The vote: Adams not voting. Cassel, Yea. Long, Yea. Mennite, Nay. Schwan, Yea. Stevenson not voting. Motion carried.
*454 Long moved, Cassel seconded that no further extensions be allowed in the sewer mains until such time as the sewer plant is adequate to carry any increase.
The vote: Adams, Nay. Cassel, Yea. Long, Yea. Mennite, Nay. Schwan, Yea. Stevenson, Nay. Marinez, Yea. Motion carried."
It is seen that by way of resolution, common council attempted to prevent the future construction of all row houses in Paulsboro.
The Borough of Paulsboro has no zoning ordinance, and although there has heretofore been appointed a planning board, no master plan has been adopted. The defendants now seek to justify their refusal to issue a building permit upon the failure of the plaintiff to meet those formal requirements of the ordinance in question, which provide for a written application and a formal filing of the plans and specifications with the building inspector. In the light of the testimony of the building inspector that he did not permit and would not have permitted a formal application and filing of the plans and specifications, the plaintiff was not required to have complied therewith. Defendants cannot now be heard to complain of the plaintiff's failure in respect to the procedural requirements as a ground for defeating its right to relief where they themselves made it impossible for the plaintiff to so comply.
Although such refusal may be deemed a waiver of the formal requirements, Reimer v. Dallas, 129 A. 390 (Sup. Ct. 1925), criticized in Tice v. Borough of Woodcliff Lake, 12 N.J. Super. 20 (App. Div. 1951); Federal Advertising Corp. v. Hardin, 137 N.J.L. 468 (Sup. Ct. 1948), it is as well apparent that were the plaintiff here obliged to so comply it would have required him not only to have performed a useless and fruitless act, but in all probability an act impossible of accomplishment. The acts of the borough agent constituted a waiver of the formal requirements of the ordinance and as well excused the plaintiff from a strict compliance with its terms, requiring application and filing, since the borough made such compliance impossible. The building inspector and the other municipal officials exhibited an intention *455 not to perform an act which it was their plain duty to perform, i.e., to furnish an application blank and to accept the plans and specifications for filing. They thereby also demonstrated their intention not to issue a building permit under any circumstance. This course of action constituted a sufficient refusal to warrant the issuance of a writ not only to oblige the building inspector to furnish an application blank and accept the plans and specifications for filing but, under the facts hereinafter set forth, to issue a building permit. State ex rel. Hanna v. Common Council of Rahway, 33 N.J.L. 110 (Sup. Ct. 1868).
The law does not require a vain form. Walsche v. Sherlock, 110 N.J. Eq. 223 (Ch. 1932); Siena v. Grand Lodge, etc., Order Sons of Italy, 11 N.J. Super. 507 (App. Div. 1951); Holub v. Jacobwitz, 123 N.J. Eq. 308 (Ch. 1937).
It is therefore here held that this defense of the defendants is without merit.
It therefore becomes necessary to consider the balance of the defenses, which may be combined in the following statement by the defendants: "Construction of row houses in Paulsboro has been banned by action of the governing body and, in any event, both the sewage and the drainage systems are inadequate to provide for the construction of row houses."
As above noted, there is in existence in the municipality neither a master plan as required under the municipal planning act, N.J.S.A. 40:55-1.1 et seq., nor a zoning ordinance, as required under N.J.S.A. 40:55-30 et seq. What the defendant municipality is here quite patently attempting to do is to restrict the construction of row houses without compliance with either the planning or zoning acts. Although planning and zoning are closely related in their conception, they are not identical. Zoning is a separation of the municipality into districts, and the regulation of buildings and structures in the districts so created, in accordance with their construction and the nature and extent of their use. Planning is a term of broader significance and connotes a systematic development contrived to promote the common interest of a municipality, particularly with relation to its future *456 physical growth, progress and needs. Mansfield & Swett, Inc., v. Town of West Orange, 120 N.J.L. 145 (Sup. Ct. 1938).
To accomplish these two particular purposes, the Legislature enacted the above statutes. In order to attain the zoning restriction here sought by the municipality it must be through the instrumentality of an ordinance. N.J.S.A. 40:55-30. A resolution is ineffective to accomplish such result. A municipality which has had delegated to it power to accomplish certain acts by way of ordinance cannot accomplish that result by way of an enactment of any less dignity, nor can an ordinance be amended by a resolution.
In American Malleables Co. v. Town of Bloomfield, 83 N.J.L. 728 (E. & A. 1912), the court said:
"To return, then, to a consideration of the effect of a resolution working a modification of an ordinance. The latter is of a higher grade than the former. There is abundance of authority holding that an ordinance cannot be amended, repealed, or suspended, except by an act of equal dignity. 2 Dill. Mun. Corp. (5th Ed.), § 572; 1 Smith, Mod. L. Corp., § 543; 28 Cyc. 380; 21 Am. & Eng. Enc. of L. 1003; City of Paxton v. Bogardus, 201 Ill. 628, 66 N.E. 853; Bills v. City of Goshen, 117 Ind. 221, 20 N.E. 115, 3 L.R.A. 261; Cascaden v. City of Waterloo, 106 Iowa, 673, 77 N.W. 333. We are of opinion that by the weight of authority a mere resolution will not serve to repeal or modify a duly enacted ordinance, and that to do so necessitates action of like formality to that required for the enactment of the original ordinance."
Marx v. Borough of Fort Lee, 4 N.J. Misc. 274, at page 276 (Sup. Ct. 1926); Ziegler v. City Council of City of Hackensack, 113 N.J.L. 215, at page 219 (Sup. Ct. 1934); Valentine v. City of Juneau, 9 Cir., 36 F.2d 904, at page 906 (9th Cir. 1929).
It follows that whether the common council conceived that it was zoning by an original resolution or was attempting to amend the building code by resolution, its action was a nullity and without effect.
It is further to be noted that the defendants seek to justify their action by virtue of the provisions of article III, section 1, of the building code above referred to, which reads as follows:

*457 "ARTICLE III. Building Committee.
Section 1. Building Committee. There shall be a Building Committee of three members appointed by the Mayor with the consent and approval of Council. The duties of such Committee shall consist of directing the work of the Building Inspector and deciding all questions arising out of or incident to the enforcement of this Ordinance, which in the judgment of the Committee can not be decided by the Building Inspector."
Nowhere in the building code does there appear any prohibition against the construction of row houses. It is admitted by the defendants that but for the adoption of the resolution to which they refer, the proposed construction complied with all of the terms of the building code. They seem to argue that by virtue of the above referred to ordinance the common council has reserved to itself the right to direct the building inspector when to issue building permits, regardless of whether such construction is permitted or proscribed in the ordinance. If the rationale of the defendants' argument were followed to its natural conclusion, the common council could, by resolution, and without any express municipal legislative prohibition, prevent the construction of one-family houses and apartment houses, or any other type of building which did not meet with their approval. As a matter of fact, the testimony discloses that on at least one occasion the building inspector, at the direction of the common council, refused to grant a permit for the construction of an apartment house without any such express legislative authority for so doing, other than the section of the building code above quoted.
Although in certain instances a municipal legislative body may reserve unto itself the right to issue building permits for certain types of construction, i.e., motor vehicle or gasoline service stations, even in these instances the ordinance so providing must lay down a sufficient norm or standard for the guidance of the municipal council in granting or refusing a requested permit. An ordinance is invalid where it vests broad discretion in the mayor and council in granting or refusing a permit. Phillips v. Borough of East Paterson, 134 N.J.L. 161 (Sup. Ct. 1946), affirmed 135 N.J.L. 203 *458 (E. & A. 1947); Phillips v. Town of Belleville, 135 N.J.L. 271 (Sup. Ct. 1947); Finn v. Municipal County Court of City of Clifton, 136 N.J.L. 34 (E. & A. 1947); Tulsa Oil Co. v. Morey, 137 N.J.L. 388 (Sup. Ct. 1948); Weiner v. Borough of Stratford, 15 N.J. 295 (1954).
A governing body may not arbitrarily or unreasonably put a restraint upon the exercise of the rights of private property. Schmidt v. Board of Adjustment, Newark, 9 N.J. 405 (1952).
The right to grant or refuse a license or permit in the discretion of the municipal governing body is invalid unless it establishes uniform rules and regulations as to all persons therein. Lipkin v. Duffy, 119 N.J.L. 366 (E. & A. 1938); Weiner v. Borough of Stratford, supra; Twp. of Raritan v. Hubb Motors, Inc., 26 N.J. Super. 409 (App. Div. 1953).
Unless there is in existence a rule of conduct to secure an impartial execution of policy in order to prevent inequality and oppression, there arises an infringement of the fundamental right of private property. Potts v. Board of Adjustment of Princeton, 133 N.J.L. 230 (Sup. Ct. 1945).
The common council not having, in article III, section 1 of the building code, established a norm or standard for its guidance in the issuance of building permits, said paragraph is invalid and the refusal to grant the permit is arbitrary and unreasonable.
I am not satisfied from the proof that defendants' objection on the grounds that the construction of the houses here in question would cause drainage and sewage problems, is bona fide. It is apparent from the testimony of the defendants' witnesses that all or a large portion of the alleged surface water on the street fronting plaintiff's land, at the time of rainfall, presently flows on to the property of the plaintiff. I am satisfied that defendants desire not to have any improvement on this plot of ground for the reason that it will eliminate a source of disposal for the street surface water. As stated by the defendants' witnesses, construction of houses on the plaintiff's land would eliminate the natural drainage from *459 the streets to its land and cause additional problems in that connection for the municipality. They do not allege that the municipality has an easement for such drainage, either by grant or prescription. To prevent the plaintiff from improving its land in order that the municipality may continue to have a drainage area by the means here employed is clearly a taking without due process or compensation, and hence unconstitutional.
There is no proof before me which would sustain the defendants' contention that either the sewage lines or the disposal plant would be overburdened by the construction of the houses here involved. There is such a paucity of evidence on this phase that it is almost non-existent. What little evidence there is concerns itself solely with secondary evidence of some direction from the State Board of Health at some undisclosed date, requiring the borough to repair or improve its sewage disposal plant.
Conceding, for the purposes of this opinion only, that the municipality does have the power to prevent any construction on the asserted grounds under its general police power, via a resolution, it has failed to prove the existence of facts which would warrant any such action. The discussions contained in Ridgefield Terrace Realty Co. v. Borough of Ridgefield, 136 N.J.L. 311 (Sup. Ct. 1947), are of general interest in this connection.
Since the plaintiff was prevented from filing its application, plans and specifications, an alternative rather than a peremptory writ should issue. This will afford the plaintiff an opportunity to comply with the procedural requirements of the building code. Federal Advertising Corp. v. Hardin, supra.
Judgment will be entered accordingly.