**SOUTHPARK SQUARE LIMITED, a Mississippi Corporation, Plaintiff-Appellee,**

v.

**CITY OF JACKSON, MISSISSIPPI, Defendant-Appellant,**

**State Highway Department of the State of Mississippi, Defendant.**

**No. 76–1806.**

United States Court of Appeals, Fifth Circuit.

Dec. 27, 1977.

Rehearing and Rehearing En Banc ·Denied Feb. 2, 1977.

---

2. The record does not reveal when the request to examine the presentence report was made.

John E. Stone, City Atty., Jackson, Miss., for defendant-appellant.

Alvin M. Binder, Jackson, Miss., for plaintiff-appellee.

Robert G. Nichols Jr., Jackson, Miss., for other interested parties.

Before COLEMAN, SIMPSON and TJOFLAT, Circuit Judges.

SIMPSON, Circuit Judge:

For want of a building permit, financing could not be obtained. For want of financing, the balance of the purchase price of the property could not be paid. For want of payment, the property went into foreclosure and was sold at auction. So says Southpark Square Limited, the aggrieved property owner. In the court below, Southpark prevailed on its claim that, because of these unfortunate consequences, the denial of a building permit by the Permit Department of the City of Jackson, Mississippi, amounted to a taking of property without just compensation in violation of the Fifth and Fourteenth Amendments,[1] and received

---

1. The district court explained its finding of a constitutional taking as follows:

    The municipality did not wish to authorize the plaintiff to construct its vast improvements necessary for the construction of this Ramada Inn at this site under such circumstances, but the municipality clearly violated the property rights of the plaintiff in deferring and thus refusing to grant such permit under such circumstances. There were cer-

a judgment for damages. We determine that the district court lacked subject matter jurisdiction and reverse.

## I. THE FACTS

On December 3, 1973, after earlier negotiations, Southpark acquired title to a plot of land fronting on Interstate 55 in Jackson, Mississippi. The aggregate purchase price was $434,000, in addition to $10,000 earlier paid for an option on the property. On this date, Southpark made a down payment of $50,000 and executed a note for the balance, payable on October 18, 1974, at an interest rate of 10 percent per annum. Southpark's purpose in acquiring the property was to build on it a Ramada Inn.

On February 4, 1974, Southpark applied to the City of Jackson Permit Department for a building permit to construct a foundation for the hotel. The application immediately encountered minor obstacles because of a local zoning ordinance and the unavailability of water and sewerage lines. A more serious problem arose when the city permit department learned from the State Highway Department that an interchange at Beasley Road on I–55 was in the planning and would require a right of way over a portion of the road frontage of Southpark's property. On February 15, 1974, Murry Stewart, the City Engineer, informed Southpark of the proposed Beasley Road interchange, noting that "[t]he exact amount of right of way needed has not been determined as yet". Six days later, Stewart again wrote to Southpark about the eventual need to acquire some of the frontage property and stated that issuance of the building permit was being deferred until city officials knew more precisely the extent of right of way needed. The City admits that it declined to issue a permit out of concern that the award of compensation when it eventually condemned the land would be substantially higher if the hotel was then in being. Stewart did suggest to

tain adjustments to be made on the site before the Ramada Inn could be permitted to move in and occupy such facility but it is no answer to this claim to say that such facilities are not then available to the lot. This

Southpark, in a letter dated March 18, 1974, that "the developer alter his construction plans so as to, if possible, have his development confined to property that will remain after this right-of-way acquisition." Faced with this denial, counsel for Southpark, on May 1, 1974, wrote to the Mayor and City Commissioners of Jackson to inform them of Southpark's precarious financial position, threatening to bring suit if the permit did not issue. The City, through its attorney, responded that until the State Highway Department finalized its plans "we cannot give you at this time any further information other than that previously furnished you".

Southpark was unable to pay the balance of the purchase price when it fell due late in 1974, and contends that it could not obtain financing because of its inability to secure a building permit. It thus forfeited the property to the vendor. On December 18, 1974, Southpark filed its complaint against the City of Jackson and the State of Mississippi Highway Department in this case, claiming damages of (a) $10,000, for loss of earnest money paid for the property; (b) $50,000, for loss of down payment on the property; (c) $48,000, for loss of sums advanced for architectural and development fees; (d) $3100 for loss of attorneys' fees expended; and (e) 10% interest on the unpaid balance of the purchase price of the property. The court dismissed the claims against the State Highway Department and awarded damages against the City for items (a), (b) and (e), totalling $88,068.50. This appeal timely followed.

## II. JURISDICTION OF THE DISTRICT COURT

At the heart of this appeal lies the question of jurisdiction—whether the district court was statutorily empowered to hear this case. In its complaint, Southpark alleged that "this action arises under the

action of the municipality resulted in a taking or damaging plaintiff's property without making any sort of compensation therefor. Such taking or damaging was for public use.

Fifth and Fourteenth Amendments to the Constitution . . . and the matter in controversy herein exceeds, exclusive of interest and costs, the sum of $10,000.00".[2] The district court concluded that it had subject matter jurisdiction under Title 28, U.S.C. § 1331 (1970).[3]

■ "Jurisdiction is essentially the authority conferred by Congress to decide a given type of case one way or the other". *Hagans v. Lavine*, 415 U.S. 528, 538, 94 S.Ct. 1372, 1379–80, 39 L.Ed.2d 577 (1974). In federal question cases under § 1331, "where the complaint . . . is so drawn as to seek recovery directly under the Constitution or laws of the United States, the federal court, but for two possible exceptions . . . must entertain the suit". *Bell v. Hood*, 327 U.S. 678, 681–82, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946). The two exceptions are where the federal question "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous". Id.

"A case arises under the Constitution or law of the United States whenever . . . the title or rights set up by the party may be defeated or sustained by a particular construction of [either]." *Fountain v. New Orleans Public Service, Inc.*, 387 F.2d 343, 344 (5th Cir. 1967), citing *Gully v. First National Bank*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936). Southpark alleges that the City's actions have violated its Fifth Amendment right not to have its property taken without just compensation. Only by construing that constitutional provision can we determine the validity of this claim. Thus, a question "arising under" the Constitution is presented in this case. *Ballard Fish & Oyster Co. v. Glaser Construc. Co.*, 424 F.2d 473 (4th Cir. 1970); *Creel v. City of Atlanta, Ga.*, 399 F.2d 777, 778 (5th Cir. 1968); *Foster v. Herley*, 330 F.2d 87, 91 (6th Cir. 1964);[4] *Sanfilippo v. County of Santa Cruz*, 415 F.Supp. 1340, 1343–44 (N.D.Cal. 1976).

■ The more difficult question presented is whether the federal question involved is "wholly insubstantial and frivolous".[5] To

2. Although the complaint failed to cite the statute conferring jurisdiction on the district court, 28 U.S.C. § 1331 (1970), this omission will not defeat jurisdiction where the facts alleged in the complaint satisfy the jurisdictional requirements of the statute. See *Schlesinger v. Councilman*, 420 U.S. 738, 744 n. 9, 95 S.Ct. 1300, 1306 n. 9, 43 L.Ed.2d 591 (1975); *Smith v. United States*, 502 F.2d 512, 519–20 (5th Cir. 1974). Title 28, U.S.C. § 1653 provides that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts". In light or our disposition of this case, it would be "a baseless formality" to require Southpark to amend its complaint at this point. *Eisler v. Stritzler*, 535 F.2d 148, 152–53 n. 3 (1st Cir. 1976).

3. Section 1331(a) provides:
(a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States *except that no such sum or value shall be required in any such action brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity.*
The italicized language, of no concern here, was added by amendment October 21, 1976. See Pub.L. 94–574, § 2, 90 Stat. 2721. This

language did not appear in the statute on the date of suit, December 18, 1974.

4. The *Foster* case, relied on by the district court in this case, was a class action on behalf of property owners who alleged that their property was taken by the City of Detroit when it stalled an eminent domain action for ten years, resulting in serious depreciation of property values. The case was first dismissed for lack of subject matter jurisdiction, 207 F.Supp. 71 (E.D.Mich.1962). The Court of Appeals reversed, holding that federal question jurisdiction was established. 330 F.2d 87 (6th Cir. 1964). On remand, the district court found that the City's actions amounted to a compensable taking and awarded damages. 254 F.Supp. 655 (E.D.Mich.1966), aff'd, 405 F.2d 138 (6th Cir. 1968). We cited the jurisdictional principles of the case with approval in *Traylor v. City of Amarillo, Texas*, 492 F.2d 1156, 1157 n. 2 (5th Cir. 1974). For a narrow reading of *Foster*, see *Jimmie's Inc. v. City of West Haven*, 436 F.2d 1339 (2d Cir. 1971).

5. The other exception to the rule of *Bell v. Hood, supra,*—that the federal question be "immaterial"—is not involved in this case. The constitutional claims, whatever their merit or substance, are the essence of this lawsuit. See *Creel v. City of Atlanta, Ga.*, 399 F.2d 777, 778 (5th Cir. 1968).

make this determination we must apply a two-pronged test:

[L]ack of substantiality in a federal question may appear either because it is obviously without merit or because its unsoundness so clearly results from the previous decisions of [the Supreme Court] as to foreclose the subject.

*Mays v. Kirk,* 414 F.2d 131, 135 (5th Cir. 1969), quoting from *California Water Service Co. v. City of Redding,* 304 U.S. 252, 58 S.Ct. 865, 867, 82 L.Ed. 1323 (1938).

This case presents a novel question of constitutional law: whether a city's denial of a building permit, ultimately resulting in the owner's loss of his property for inability to obtain financing, is a compensable taking. We can find no prior cases which make it "apparent to a legal certainty that no constitutional violation had been committed as alleged." *Rodriguez v. Ritchey,* 556 F.2d 1185, 1192 (5th Cir. 1977) (en banc). Courts dealing with the taking question in roughly analogous fact situations have reached disparate conclusions hinging on subtle distinctions and not clearly foreclosing a finding for the plaintiff in this case.[6] A dispositive prior decision would be difficult to find because tradition-

ally, the Supreme Court has "treated the issue as to whether a particular governmental restriction amounted to a constitutional taking as being a question properly turning upon the particular circumstances of each case". *United States v. Central Eureka Mining Co.,* 357 U.S. 155, 168, 78 S.Ct. 1097, 1104, 2 L.Ed.2d 1228 (1958). Also, while the City of Jackson did not condemn or physically occupy Southpark's land, "[g]overnmental action short of acquisition of title or occupancy has been held, if its effects are so complete as to deprive the owner of all or most of his interest in the subject matter, to amount to a taking". *United States v. General Motors Corp.,* 323 U.S. 373, 378, 65 S.Ct. 357, 359–60, 89 L.Ed. 311 (1945).

Even though Southpark's claim is not foreclosed by prior authoritative decisions, it must be more than frivolous to support federal question jurisdiction. In determining substantiality, we must ask "whether there is any legal substance to the position the plaintiff is presenting". C. Wright & A. Miller, 13 Federal Practice and Procedure § 3564, at 426 (1975). The test here "is a rigorous one and if there is any foundation of plausibility to the claim fed-

---

**6.** In *Maher v. City of New Orleans,* 516 F.2d 1051 (5th Cir. 1975), this Court held that denial of a building permit pursuant to an ordinance enacted to preserve a historic section of the city did not amount to a taking. Under similar circumstances, the Court of Claims found a taking, distinguishing Maher because the plaintiff in that case "had not shown that sale of the property was impracticable, that commercial rental could not provide a reasonable rate of return, or that other potential use of the property was foreclosed". *Benenson v. United States,* 548 F.2d 939, 949 (Ct.Cl.1977) (quoting from 516 F.2d at 1066). In *Kirschke v. City of Houston,* 330 S.W.2d 629 (Tex.Civ.App.1960), appeal dismissed, 364 U.S. 474, 81 S.Ct. 242, 5 L.Ed.2d 221 (1960), a Texas court held that denial of a building permit because of anticipated highway construction was not a constitutional taking where the property owner could still compel issuance of the permit by mandamus. Sixteen years later another Texas court refused to follow *Kirschke* in a case which closely parallels the instant case. The issue before the court in *San Antonio River Authority v. Garrett Brothers,* 528 S.W.2d 266 (Tex. Civ.App.1975), was "whether prohibitions on use of property which have as their purpose

the prevention of private development that would increase the cost of planned future acquisition of such property by the government is the type of case in which payment of compensation is required". Id. at 273. The court held that the just compensation clause of the Fifth Amendment prohibited the government "as a prospective purchaser of land, to give itself such an advantage" by denying a building permit. Id. at 274. Similarly, while the California Supreme Court has held that no "cause of action in inverse condemnation [is] stated for the denial of a building permit," *Selby Realty Co. v. City of San Buenaventura,* 10 Cal.3d 110, 109 Cal.Rptr. 799, 514 P.2d 111, 122 (1973), it has suggested that oppressive conduct or unreasonable delay in connection with the denial could alter this result. *Klopping v. City of Whittier,* 8 Cal.3rd 39, 104 Cal.Rptr. 1, 500 P.2d 1345, 1350 n. 1 (1972). *See also Antonelli Construction v. Milstead,* 34 N.J.Super. 449, 112 A.2d 608 (1955): "To prevent the plaintiff from improving its land in order that the municipality may continue to have a drainage area by the means here employed [denial of a building permit] is clearly a taking without due process or compensation, and hence unconstitutional". Id. at 614.

eral jurisdiction exists". *Id.* at 428, quoted in *Hilgeman v. National Ins. Co. of America,* 547 F.2d 298, 300 n. 1 (5th Cir. 1977).[7]

▮▮▮ However hard we strain to find "any legal substance" to Southpark's position, we cannot avoid the conclusion that its claim is "wholly insubstantial and frivolous". Southpark lost its property as a direct consequence of its own financial arrangements and tactical decisions, not because the City committed any act remotely resembling a taking.

The City of Jackson denied Southpark's application for a building permit pending a decision by the State Highway Department regarding construction of the Beasley Road interchange. The effect of this denial on Southpark's beneficial ownership of the property is speculative at best. We do not know whether the City's determination would have been reversed had Southpark filed a formal administrative appeal, an appeal to a state court, or a petition for a writ of mandamus to compel issuance of the permit. Even assuming that denial of the permit was valid and would have withstood any legal challenge by Southpark, the value of the property actually increased during the year in which Southpark held title. Had Southpark looked for and found a purchaser willing to assume the mortgage, or to pay cash in full, it might have sold the property, either at no loss or even at a profit. In essence, then, Southpark is seeking to hold the City liable in damages, through inverse condemnation, for the financial arrangements of a private mortgagor.

Considered against the facts of this case, such a proposition is unsupportable in law or policy. Southpark defaulted on its note for the purchase price of the property only ten months after the county engineer denied the building permit pending a decision with respect to the condemnation of a portion of the property in question. While it is conceivable that a municipality's denial of a permit for similar reasons may be so manifestly in bad faith or accompanied by unreasonable and oppressive delay as to constitute a taking,[8] this is not such a case. We would deny a municipality the breathing space needed for responsible decision-making in the vital realm of urban planning if we held that it could not wait ten months to determine what property is needed for major road construction. A city would be unduly hamstrung if its permit decisions subjected it to potential liability on the basis of financial arrangements independently made by property owners affected by those decisions.

The equities of this case also argue strongly against the position asserted by Southpark. In deciding to build a Ramada Inn on its property, Southpark took the risk that its application for a building permit would be denied in a proper exercise of the police power by the City of Jackson.[9] The

---

7. In finding a lack of subject matter jurisdiction under this test, we are well aware that "[t]he jurisdictional issue here is entirely separate from the questions whether the complaint states a claim on which relief can be granted . . . ." *Weir v. Muller,* 527 F.2d 872, 873 (5th Cir. 1976). As the Supreme Court noted in *Bell v. Hood, supra,* "the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction". 327 U.S. at 682, 66 S.Ct. at 776. Although a federal question substantial enough to confer jurisdiction but not substantial enough to state a cause of action is difficult to conceive, the doctrine is well established. See, e. g., *Wheeldin v. Wheeler,* 373 U.S. 647, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963). Courts must thus draw fine lines, even if to some the distinction between a dismissal for lack of jurisdiction and dismissal for failure to state a claim upon which relief can be granted is "an exer-

cise in semantics". Barron & Holtzoff, 1 Federal Practice and Procedure § 25, at 124 (1960).

8. See, e. g., *Foster v. City of Detroit, Mich.,* 254 F.Supp. 655, 661 (E.D.Mich.1966), aff'd, 405 F.2d 138 (6th Cir. 1968), where the city was charged with "causing and permitting the threat of imminent condemnation to hang over [the] property for ten years, all the while encouraging the decay and desertion of the area, and then discontinuing the action and instituting new proceedings with appraisals based on the lower values of vacant property in a, by this time, blighted area".

9. "Those who enter upon a business take that risk". *Alaska Fish Salting and By-Products Co. v. Smith,* 255 U.S. 44, 48, 41 S.Ct. 219, 220, 65 L.Ed. 489 (1921).

Federal courts have been extremely reluctant to find such permit denials so arbitrary and capricious as to transform them from permissible regulation to compensable taking. See, e. g., *Maher v. City of New Orleans,* 516 F.2d 1051 (5th Cir. 1975); *Trinity Methodist Church, South v. Federal Radio Comm'n,* 61 App.D.C. 311, 62 F.2d 850 (1932), cert. denied, 288 U.S. 599, 53 S.Ct. 317, 77 L.Ed. 975 (1933); *Pope v. City of Atlanta,* 418 F.Supp. 665 (N.D.Ga.1976). If the City did illegally deny the permit in this case, Southpark could have acted to redress the wrong and possibly have avoided the forfeiture which was otherwise inevitable. A local ordinance allowed an appeal within five days to the City Council from a permit decision by the City Engineer.[10] Mississippi law provides for an appeal from a decision of the City Council to the Circuit Courts. Miss.Code Ann. § 11–51–75 (1972). See *Cowan v. Gulf City Fisheries, Inc.,* 344 So.2d 724 (Miss.1977); *City of Jackson v. Sunray DX Oil Co.,* 197 So.2d 882 (Miss. 1967). Additionally, mandamus is available to compel issuance of an improperly denied permit. *Thompson v. Mayfield,* 204 So.2d 878 (Miss.1967); *Berry v. Embrey,* 238 Miss. 819, 120 So.2d 165 (1960).[11] Of course, Southpark could have revised its building plans to avoid any possible conflict with the City's planned road construction. Yet all that Southpark did was to write a single letter to the mayor and city commissioners explaining its need for a permit in light of its inability to obtain financing, but not alleging that denial of the permit was illegal. For many months, Southpark stood mute, doing nothing to protect its property and legally abandoning its original application for a permit.[12]

Clearly, Southpark suffered damage: it lost its property. But "damage or loss does not of itself create a taking. Whether property has been taken for a public use so as to require just compensation is determined by the character of the invasion, not by the amount of damage suffered". *Woodland Market Realty Co. v. City of Cleveland,* 426 F.2d 955, 958 (6th Cir. 1970). The only municipal "invasion" involved in this case is the denial of a building permit—a denial which, on the record before us, cannot be branded as arbitrary, capricious, ultra vires, or as anything other than a valid exercise of the police power. We cannot consider such a denial as an invasion of any vested property right, for until a permit was issued, Southpark had no vested right to build a Ramada Inn. As relevant to the issue of whether there was a constitutional taking, the operative cause of Southpark's loss was the private financial arrangement made by it in acquiring the property. The city's exercise of its licensing power cannot be circumscribed, under an inverse condemnation theory, by private contracts to which it is not a party.

We hold that the district court was without power to entertain this federal question case otherwise within its jurisdiction because the claim asserted is "so attenuated and unsubstantial as to be absolutely devoid of merit". *Newburyport Water Co. v. Newburyport,* 193 U.S. 561, 579, 24 S.Ct. 553, 557, 48 L.Ed. 795 (1904). Lacking jurisdiction, the district court should have dismissed the action. Fed.R.Civ.P. 12(h)(3).

The judgment of the district court is accordingly reversed with directions to vacate

---

**10.** Section 10 of an ordinance passed by the Jackson City Council on June 1, 1950, recorded in Minute Book "Z", pages 198–203. The full ordinance is a part of the record in this case.

**11.** Other states have considered the availability of mandamus as a bar to an inverse condemnation action. See *Selby Realty Co. v. City of San Buenaventura,* 10 Cal.3d 110, 109 Cal.Rptr. 799, 514 P.2d 111, 122 (1973); *Kirschke v. City of Houston,* 330 S.W.2d 629 (Tex.Civ.App. 1960). We raise this consideration here as relevant to determining whether the actions of the City of Jackson can be construed as a taking,

not to suggest that Southpark's failure to seek mandamus operates as a jurisdictional bar under the exhaustion doctrine. See *Foster v. City of Detroit,* Mich., 405 F.2d 138, 145 (6th Cir. 1968).

**12.** A local ordinance regarding application for permits, adopted December 18, 1973, and made a part of the record in this case, provides as follows: "105.5—LIMITATION. An application for a permit for any proposed work shall be deemed to have been abandoned six months after the date of filing, unless before then a permit shall have been issued".

the judgment appealed from and dismiss the action.

REVERSED.